# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1187

**THOMPSON TREE & SPRAYING SERVICE, INC., D/B/A LIVE OAK LANDSCAPES**

**VERSUS**

**WHITE-SPUNNER CONSTRUCTION, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 236,974
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

**REVERSED AND REMANDED.**

**John M. Madison, III
Kracht, Frazier, Madison, LLP
5149 Bluebonnet Boulevard
Baton Rouge, LA 70809-3076
Telephone: (225) 293-4568
COUNSEL FOR:**
 **Plaintiff/Appellant - Thompson Tree & Spraying Service, Inc., d/b/a
 Live Oak Landscapes**

**Kevin P. Riche
Watson, Blanche, Wilson & Posner
P. O. Drawer 2995
Baton Rouge, LA 70821-2995
Telephone: (225) 387-5511
COUNSEL FOR:**
 **Defendants/Appellees - Wal-Mart Stores, Inc., Hartford Fire
 Insurance Company, and White-Spunner Construction, Inc.**

**THIBODEAUX, Chief Judge.**

In this dispute between a general contractor and a sub-contractor over the payment for the work completed, the sub-contractor (Appellant), Thompson Tree & Spraying Service, Inc., doing business as Live Oak Landscapes (Live Oak), asserts that the trial court erred by granting a summary judgment and an exception of improper venue in favor of Appellees, White-Spunner Construction, Inc. (the general contractor), Hartford Fire Insurance Company (the insurer), and Wal-Mart Stores, Inc. (the owner of the project). Appellees filed a motion to dismiss Live Oak's appeal but did not file an answer to the appeal. Because we find that the trial court rendered an immediately-appealable final judgment in this matter, we deny the Appellees' motion to dismiss the appeal. Because we find that Live Oak timely filed a statement of claim or privilege, we reverse the trial court's summary judgment. Finally, because we find that the forum selection clause in the contract between Live Oak and White-Spunner is against Louisiana public policy, we reverse the grant of exception of improper venue.

I.

## ISSUES

(1)     We shall consider whether the trial court's grant of Appellees' motion for "partial" summary judgment was a partial final judgment requiring designation of "final judgment" to be appealable, where all the parties and all the claims in this suit have been dismissed;

(2)     After concluding, for the reasons expressed below, that the judgment in this matter was final and immediately-appealable, we shall consider whether the sub-contractor filed its statement of claim or privilege timely where a notice of contract and, what could be considered a notice of termination, were filed, but both lacked the legal description of the property and where the contractor filed his statement

of claim or privilege over a year after the purported notice of termination;

(3) We shall finally consider whether Louisiana has a strong public policy against enforcement of forum selection clauses thereby limiting the freedom of the parties to contractually select the venue before litigation begins where the selected venue is in violation of Louisiana Code of Civil Procedure.

II.

**FACTS AND PROCEDURAL HISTORY**

This dispute arises out of the Wal-Mart Super-Center project in Alexandria, Louisiana. The general contractor for the project, White-Spunner, entered into a construction contract with Wal-Mart and filed a notice of the contract in August of 2007 in the mortgage records of Rapides Parish.

Then, White-Spunner entered into a sub-contract with Live Oak for landscape and irrigation works. In June of 2008, White-Spunner filed a document, titled "Certificate of Substantial Completion" in the mortgage records. In September of 2009, Live Oak filed a statement of claim or privilege (lien) against the project in the mortgage records because, allegedly, it was not paid for the work it satisfactorily performed. In December of 2009, Live Oak filed this suit. Live Oak alleged a breach of contract against White-Spunner. Live Oak sought to enforce its claims under the Louisiana Private Works Act (LPWA) against Wal-Mart and Hartford.

Appellees filed, in addition to other alternative exceptions, an exception of improper venue and a motion for partial summary judgment. In support of the exception, Appellees pointed to the forum selection clause in the contract between White-Spunner and Live Oak. The clause identifies Mobile County, Alabama, as the place of contract formation and Mobile County Circuit Court as the forum "for any litigation between the parties."

2

Without an explicit ruling as to whether the venue was proper for the LPWA claims, the trial court held that Live Oak did not timely file its statement of claim or privilege. It reasoned that because both the notice of contract and the notice of termination were equally defective in that neither contained a legal description of the property, Live Oak had sixty days from the substantial completion of the work to file the lien. Because more than sixty days elapsed from the substantial completion before Live Oak filed its lien, the filing was untimely. Thus, the trial court dismissed the LPWA claims.

After this dismissal, only the breach of contract claim remained. The trial court then held that under the forum selection clause, the proper venue lies in an Alabama court and, thus, dismissed the contract breach claim. These rulings dismissed all of the parties and all of Live Oak's claims.

III.

**STANDARD OF REVIEW**

Appellate courts review summary judgments de novo. *Guilbeaux v. Times of Acadiana, Inc.*, 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183, *writ denied*, 97-1840 (La. 10/17/97), 701 So.2d 1327. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

# IV.

# LAW AND DISCUSSION

## (1) Motion to Dismiss the Appeal

An interlocutory judgment "does not determine the merits but only preliminary matters in the course of the action." La.Code Civ.P. art. 1841. A final judgment "determines the merits in whole or in part." *Id*.

> A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
>
> > (1) *Dismisses the suit as to less than all of the parties*, defendants, third party plaintiffs, third party defendants, or intervenors.
> >
> > . . . .
>
> B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than *all of the claims, demands, issues, or theories*, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

La.Code Civ.P. art. 1915 (emphasis added). The statute further provides that if the trial court does not make such a determination and designation, the judgment may not be immediately appealed. *Id.*

As this court has already explained, generally, La.Code Civ.P. art. 1915(A) applies to the dismissal of parties, and La.Code Civ.P. art. 1915(B) applies to the resolution of issues. *Jeansonne v. New York Life Ins. Co.*, 08-932 (La.App. 3 Cir. 5/20/09), 11 So.3d 1160. Thus, when one party receives a partial relief and is not dismissed from the suit, the judgment is interlocutory in the absence of the court's designation as final. *Id.* Yet, "[a] judgment that dismisses a party from a suit without

4

adjudicating all of the issues in a case is a partial final judgment subject to an immediate appeal without the need of the trial court's certification as such." *Id.* at 1168 (citing La.Code Civ.P. art. 1915(A)(1); *Cavalier v. Rivere's Trucking, Inc.*, 03-2197 (La.App. 1 Cir. 9/17/04), 897 So.2d 38).

For example, a plaintiff filed suit against multiple parties. *Jeansonne*, 11 So.3d 1160. The trial court granted a summary judgment and an exception of peremption in favor of some parties, dismissing them from the suit. *Id.* The court granted motions for summary judgment in favor of the other parties several years later. *Id.* Plaintiff appealed seeking review of the recently-granted motions and the ones granted several years previously. *Id.* Plaintiff maintained that because the trial court did not designate the old rulings as final judgments, they were interlocutory and not immediately-appealable. *Id.* This court disagreed stating that to follow the plaintiff's reasoning would negate La.Code Civ.P. art. 1915(A)(1). *Id.* Thus, a judgment that dismisses a party from the suit is an immediately-appealable judgment. *Id.*

Here, the only causes of action Live Oak filed against Wal-Mart and Hartford were based on LPWA. The trial court found that Live Oak did not timely file its statement of claim or privilege and dismissed the causes of action. Thus, the trial court dismissed *all* of the claims against Wal-Mart and Hartford, thereby dismissing them from the suit. The court then, relying on the forum selection clause, dismissed the contract breach claim because of improper venue. Because the correct venue, according to the trial court, lies outside of Louisiana making it impossible to transfer the action to the court of proper venue, the court dismissed the contract breach claim. Thus, according to the trial court's judgment, all parties and all claims in this suit have been dismissed. Therefore, the judgment was final and did not

require a designation to be immediately-appealable. Based on these considerations, we deny Appellees' motion to dismiss the appeal.

### (2) Timeliness of the Statement of Claim or Privilege

> A. If a notice of contract is properly and timely filed in the manner provided by R.S. 9:4811,[1] the persons to whom a claim or privilege is granted by R.S. 9:4802 shall within thirty days after the filing of a notice of termination of the work:

---

[1]La.R.S. 9:4811 provides:

A. Written notice of a contract between a general contractor and an owner shall be filed as provided in R.S. 9:4831 before the contractor begins work, as defined by R.S. 9:4820, on the immovable. The notice:

> (1) Shall be signed by the owner and contractor.
>
> (2) Shall contain the legal property description of the immovable upon which the work is to be performed and the name of the project.
>
> (3) Shall identify the parties and give their mailing addresses.
>
> (4) Shall state the price of the work or, if no price is fixed, describe the method by which the price is to be calculated and give an estimate of it.
>
> (5) Shall state when payment of the price is to be made.
>
> (6) Shall describe in general terms the work to be done.

B. A notice of contract is not improperly filed because of an error in or omission from the notice in the absence of a showing of actual prejudice by a claimant or other person acquiring rights in the immovable. An error or omission of the identity of the parties or their mailing addresses or the improper identification of the immovable shall be prima facie proof of actual prejudice.

C. A notice of contract is not improperly filed because a proper bond is not attached.

D. A general contractor shall not enjoy the privilege granted by R.S. 9:4801 if the price of the work stipulated or reasonably estimated in his contract exceeds twenty-five thousand dollars unless notice of the contract is timely filed.

E. If a notice of contract is mutually released by the owner and contractor, then the contract will have no effect, provided no work has begun on the land or materials placed on the site. The recorder of mortgages shall immediately cancel the contract upon the filing of the mutual release and an affidavit made by a registered or certified engineer or surveyor, licensed architect, or building inspector employed by the city or parish or by a lending institution chartered under federal or state law, that states he inspected the immovable at a specified time subsequent to the filing of the contract and work had not been commenced and no materials placed at the site. If the contract, or a certified copy, is then refiled, the refiling date shall become the effective date for privilege for work done pursuant to the contract in accordance with R.S. 9:4820(A)(1).

(1) File a statement of their claims or privilege.

(2) Deliver to the owner a copy of the statement of claim or privilege. If the address of the owner is not given in the notice of contract, the claimant is not required to deliver a copy of his statement to the owner.

B. A general contractor to whom a privilege is granted by R.S. 9:4801 of this Part, and whose privilege has been preserved in the manner provided by R.S. 9:4811, shall file a statement of his privilege within sixty days after the filing of the notice of termination or substantial completion of the work.

C. Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim and privilege under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:

(1) The filing of a notice of termination of the work; or

(2) The substantial completion or abandonment of the work, if a notice of termination is not filed.

La.R.S. 9:4822. Other Louisiana courts, as well as the federal appeals court, fifth circuit, have considered the above statute. These courts concluded that if the notice of contract is filed, but the notice of termination is not filed or is deficient, neither the sixty-day, nor the thirty-day period start to run. *Bernard Lumber Co., Inc. v. Lake Forest Constr. Co., Inc.*, 572 So.2d 178 (La.App. 1 Cir. 1990); *Rowley Co., Inc. v. Southbend Contractors, Inc.*, 517 So.2d 1260 (La.App. 4 Cir. 1987); *In re Whitaker Constr. Co., Inc.*, 439 F.3d 212 (5th Cir. 2006).

For example, where the notice of contract and the notice of termination were both filed, but neither one contained a legal description of the property, the fourth circuit held that the time period under the LPWA never commenced. *Rowley*,

7

517 So.2d 1260. Relying on La.R.S. 9:4822(E)[2] and La.R.S. 9:4831(C)[3] the fourth circuit concluded that a notice of termination must contain a legal description of the property to be effective. *Id.* Because the notice of termination did not contain the legal description it was ineffective. *Id.* The court further found that the notice of contract was not ineffective even though it did not contain the legal description of the property. *Id.* The court supported this conclusion with La.R.S. 9:4811(B). *Id.* The statute stated that a notice of contract is not improperly filed because of an error or omission unless an actual prejudice is shown by a claimant.[4] *Rowley*, 517 So.2d 1260.

Where the notice of contract was filed but the notice of termination was not, the first circuit held that the tolling period for filing a statement of claim or privilege was not activated. *Bernard Lumber Co., Inc.*, 572 So.2d 178. The party

---

[2]A notice of termination of the work:

> (1) Shall reasonably identify the immovable upon which the work was performed and the work to which it relates. If the work is evidenced by notice of a contract, reference to the notice of contract as filed or recorded, together with the names of the parties to the contract, shall be deemed adequate identification of the immovable and work.

La.R.S. 9:4822(E)(1)

[3]La.R.S. 9:4831 reads:

A. The filing of a notice of contract, notice of termination, statement of a claim or privilege, or notice of lis pendens required or permitted to be filed under the provisions of this Part is accomplished when it is filed for registry with the recorder of mortgages of the parish in which the work is to be performed. The recorder of mortgages shall inscribe all such acts in the mortgage records.

B. For purposes of this Part, the recorder of mortgages includes the office of the clerk of court and ex officio recorder of mortgages.

C. Each filing made with the recorder of mortgages pursuant to this Part which contains a reference to immovable property shall contain a description of the property sufficient to clearly and permanently identify the property. A description which includes the lot and/or square and/or subdivision or township and range shall meet the requirement of this Subsection. Naming the street or mailing address without more shall not be sufficient to meet the requirements of this Subsection.

[4]The current version of the statute also reads that "[a]n error or omission of the identity of the parties or their mailing addresses or the improper identification of the immovable shall be prima facie proof of actual prejudice." La.R.S. 9:4811(B).

who failed to file the notice of termination argued that the legislature did not intend for there to be an indefinite period for filing the statement of claim or privilege. *Id.* The legislature intended, the party argued, La.R.S. 9:4822(C) with its sixty-day time limit to apply in situations where the notice of contract but no notice of termination have been filed. *Id.*

The court rejected this argument. First, quoting the official comments to La.R.S. 9:4822, the court stated: "[i]f a notice of contract is filed, a notice of termination is always required to commence the 30 day time for filing." *Id.* at 181. The first circuit then reasoned that the statutory procedure of filing the notice of contract and the notice of termination was designed to cut off "*valid* assertions of any potential claims of privilege." *Id.* (emphasis added). Thus, to take advantage of the statute, the statute requires the owner to take affirmative actions. *Id.* Failure to take the appropriate actions places the burden of consequences on the party responsible for the failure. *Bernard Lumber Co., Inc.*, 572 So.2d 178.

In another case, after finding an ambiguity in the statute, the federal fifth circuit, relying on the Louisiana jurisprudence and the official comments to the statute, also concluded that where the notice of contract has been filed but the notice of termination has not, the tolling period never started to run. *In re Whitaker Constr. Co., Inc.*, 439 F.3d 212. The federal court rejected the suggestion that La.R.S. 9:4822(C) is a "catch-all" category and should apply in this situation. *Id.* The fifth circuit concluded that such "interpretation does not follow directly from the statutory language, and it is inconsistent with" the Louisiana jurisprudence and the official comments to the statute. *Id.* at 226.

On the other hand, where the notice of contract that did not contain the legal description of the property was filed but the notice of termination was never filed, more recently, the first circuit applied a sixty-day tolling period which

commenced on the date of substantial completion. *Norman H. Voelkel Constr., Inc. v. Recorder of Mortgages for E. Baton Rouge Parish*, 02-1153 (La.App. 1 Cir. 6/27/03), 859 So.2d 9, *writs denied*, 03-1962, 03-2133 (La. 10/31/03), 857 So.2d 486, 488. The court did not distinguish the case from the previous jurisprudence (and, under the civilian tradition, it does not have to) but relied on La.R.S. 9:4811(B). *Id.* That section states that although an error in the notice of contract does not make the filing of the notice improper unless there is a showing of actual prejudice, an improper identification of the immovable is a prima facie proof of actual prejudice. La.R.S. 9:4811(B). In the footnote the court stated that the plaintiff sub-contractor did not rebut the presumption of actual prejudice. *Norman H. Voelkel Constr., Inc.*, 859 So.2d 9.

The court found that in the absence of legal description, the notice of contract was improper, and, therefore, the court applied La.R.S. 9:4822(C). *Id.* Under this section, in situations where no notice of contract and no notice of termination have been filed, persons may file a claim or privilege within sixty days from the date of substantial completion or abandonment of the work. La.R.S. 9:4822(C). Because the sub-contractor did not file his claim or privilege within sixty days of substantial completion, the court held the filing untimely. *Norman H. Voelkel Constr., Inc.*, 859 So.2d 9.

We find that in this case La.R.S. 9:4822(A) applies. This subsection of the statute governs situations in which a notice of contract has been filed. The language of this subsection, the official comments to the statute, and the above-cited jurisprudence, all lead to the conclusion that if the notice of termination has not been filed or was deficient, then the tolling period never starts to run.

Louisiana Revised Statutes 9:4822(C) governs those situations where the notice of contract has not been filed. Louisiana Revised Statutes 9:4811(B) states

that an improper identification of an immovable is prima facie proof of actual prejudice which would make the filing of the notice of contract improper. Nevertheless, the effect of a presumption is to relieve "*him in whose favor it exists from the necessity of any proof; but may none the less [sic] be destroyed by rebutting evidence.*" La.R.S. 15:432 (emphasis added).

Under the LPWA, the owner of the immovable has unlimited personal liability to those who perform the work on the property unless the owner timely files a notice of contract and the general contractor files a proper bond. La.R.S. 9:4802(C). Thus, the primary purpose of a notice of contract is to relieve the owner of potentially unlimited liability under the LPWA. To take advantage of this limit on liability, the owner must timely file a proper notice of contract. The notice of contract must contain a proper identification of the property. Failure to properly identify the property creates a presumption in favor of the person who is protected under LPWA, here the sub-contractor, that the notice of contract was improperly filed. This means that the owner, presumptively, is not relieved of unlimited personal liability. Therefore, the presumption is there for the benefit of *the claimant*, here the sub-contractor, against the *owner*.

Thus, in situations where the sub-contractor wants to reach the owner for the purposes of liability, La.R.S. 9:4811(B) allows him to dispense with proof of actual prejudice to himself where the notice of contract did not properly identify the immovable. What Appellees propose to do is to use the presumption that was created in favor of the sub-contractor to his detriment. In essence, they argue that because they did not properly do what they were supposed to do, i.e., to include the legal description of the immovable in the notice of contract, they should benefit from their own failure. This court declines to accept such a position.

11

Even if we were to construe the presumption against Live Oak, that presumption is rebuttable by proof that the facts are actually otherwise. La.R.S. 15:432. Here, Live Oak submitted proof that it was not prejudiced by the failure to include a legal description in the notice of contract. Therefore, even if we were inclined to apply the presumption against Live Oak, that action would be of no avail to Appellees.

Based on the above discussion, this court concludes that the failure to include a proper identification of the immovable in the notice of contract does not make the notice ineffective under the facts of this case.[5]

We agree with our sister-jurisdictions which concluded that where the notice of contract was filed, but the notice of termination was not filed or was defective, the applicable tolling period for filing a statement of claim or privilege is in La.R.S. 9:4822(A). To begin the tolling period, a notice of termination must be filed. If a notice of termination was not filed or was defective, then the tolling period does not begin to run. As the first circuit aptly pointed out, because the filing procedures specified in La.R.S. 9:4822 were designed to cut off valid claims, to take advantage of the statute the owner must take affirmative actions. Failure to take the actions places the burden of the consequences on the party responsible for the failure.

Based on these considerations, Live Oak's statement of claim or privilege was timely.

---

[5]We caution a potential inference that the failure to include a proper identification of the immovable would not make the notice of contract ineffective with respect to the owner's personal liability. The statute is very clear that the presumption would be in favor of the claimant that he suffered actual prejudice from the failure to include the proper identification. Thus, under the statute, it would be the owner's burden to rebut that presumption and to make the notice of contract filing effective to limit the owner's personal liablity.

### (3) Forum Selection Clause and Venue

Because Appellees did not answer the appeal, we do not consider whether the venue was proper for Live Oak's claims under LPWA.[6] Because we reverse the trial court's dismissal of Live Oak's claims under LPWA and because the trial court held that the contract claims should be litigated in Alabama, we now need to consider whether the forum selection clause is enforceable.

"An objection to the venue may not be waived prior to the institution of the action." La.Code Civ.P. art. 44(A).[7]

> It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts.

La.R.S. 51:1407(A).

> The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.

La.R.S. 9:2779(A).

There are several appellate courts which have concluded that forum selection clauses are legal and binding in Louisiana unless the resisting party clearly

---

[6]Because the trial court issued a judgment on the merits, it implicitly held that the venue was proper with respect to these claims.

[7]An interesting historical perspective regarding the evolution of La.Code Civ.P. art. 44(A) from Article 162 of the Code of Practice of 1870 and the associated jurisprudence can be found in Eric Michael Liddick, *Give Me Freedom of Contract or Give Me Death: The Obscurity of Article 44(A) of the Louisiana Code of Civil Procedure*, 54 Loy. L. Rev. 602 (2008).

shows that the enforcement would be unreasonable and unjust, that the clause arises from fraud or overreaching, or that the enforcement would contravene a strong public policy. *E.g., Case Atl. Co. v. Blount Bros. Constr., Inc.,* 42,251 (La.App. 2 Cir. 6/20/07), 960 So.2d 1274, *writ denied,* 07-1541 (La. 10/12/07), 965 So.2d 403. The supreme court has not addressed the issue explicitly, but has touched upon it in two cases. In *Lejano v. Bandak,* 97-388 (La. 12/12/97), 705 So.2d 158, *cert. denied, Lejano v. K.S. Bandak Assuranceforeningen Gard,* 525 U.S. 815, 119 S.Ct. 52 (1998), the supreme court addressed a forum selection clause in an admiralty action. Citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522 (1991), the court held that "in admiralty cases, federal law governs the enforceability of forum selection clauses." *Lejano,* 705 So.2d 158, 166. Thus, applying the *federal law,* the court held that forum selection clauses are generally enforceable. *Id.*

In *Power Marketing Direct, Inc. v. Foster,* 05-2023 (La. 9/6/06), 938 So.2d 662, the court cited *Lejano* for the proposition that in *Louisiana* forum selection clauses are generally enforceable. This case is challenging for two reasons. First, *Lejano* applied the *federal law* and, therefore, cannot be cited for the statement of *Louisiana* law. Thus, the supreme court is "announcing" the new law without a citation to anything. Second, this pronouncement in *Power Marketing* is dictum. The court did not have to decide whether the clause was or was not enforceable because the party claiming unenforceability of the clause has already admitted the allegations of jurisdiction and venue in the forum selected under the contract. Thus, the party waived the objection to venue *after* the litigation commenced.

This circuit also made a statement that forum selection clauses are generally enforceable in *Calahan v. Haspel,* 99-44 (La.App. 3 Cir. 5/5/99), 732 So.2d 796. The case involved a rental of residential property. *Id.* The court had to consider whether the forum selection clause conferred personal jurisdiction over the defendant

on this court. *Id.* Holding that it did not, because the defendant did not have enough contacts with this State, this court stated that forum selection clauses are legal and binding, unless held unreasonable under the circumstances. *Id.* The forum selection clause selecting venue in Louisiana was held unenforceable in this case for the same reasons the court could not assert personal jurisdiction over the defendant. *Id.*

One of the examples from our sister-jurisdictions on which Appellees relied heavily in their brief is *Case Atlantic Co.*, 960 So.2d 1274. There, the contract was between the Department of Transportation and Development (DOTD) and Blount to build a bridge. *Id.* The contract incorporated by reference a provision that any litigation related to the contract, bidding, or award thereof shall be in Baton Rouge Parish. *Id.* Blount sub-contracted with Case Atlantic. *Id.* Case sent lien notices to DOTD, alleging Blount failed to pay. *Id.* DOTD withheld two payments from Blount. *Case Atlantic Co.*, 960 So.2d 1274. Case filed a concursus proceeding, naming Blount, DOTD, and DOTD's surety as defendants. *Id.* DOTD deposited the money withheld. *Id.* Blount filed a cross-claim against DOTD, claiming DOTD wrongly withheld the payment. *Id.* DOTD responded with an exception of improper venue. *Id.* Blount contended that the venue for concursus proceedings was in Caddo Parish and was mandated by the statute (citus of the immovable), thus, the cross claim should also be litigated there. *Id.*

The court disagreed: "Blount's cross-claim is not a concursus but a breach of contract claim." *Case Atlantic Co.*, 960 So.2d 1274, 1278. The court was cognizant of the competing policy interests. *Id.* It noted that the law disfavors multiplicity of actions and piecemeal litigation. *Id.* The court weighed this policy against the following considerations: concursus is a summary proceeding and a contract claim is an ordinary action; thus, Case Atlantic would be inconvenienced if its summary proceeding were converted into an ordinary action. *Id.* The court also

noted the enormous benefit accrued to Blount from contracting with DOTD. *Id.* This benefit dwarfed Blount's potential inconvenience of litigation in another *parish. Id.*

There are two sources of law in Louisiana: legislation and custom, with legislation superceding custom in every instance. *Doerr v. Mobil Oil Corp.*, 00-947 (La. 12/19/00), 774 So.2d 119 (citing La.Civ.Code arts. 1, 3). "Judicial decisions, on the other hand, are not intended to be an authoritative source of law in Louisiana." *Id.* at 128 (citing A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW SYSTEM § 35 (1977)). Because "'one of the fundamental rules of [the civil law tradition] is that a tribunal is never bound by the decisions which it formerly rendered: it can always change its mind,' 1 Marcel Planiol, Treatise on the Civil Law § 123, (La. State Law Inst. trans.1959) (12th ed.1939), prior holdings by this court are persuasive, not authoritative, expressions of the law." *Id.* at 128-29 (citing A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW SYSTEM § 35 (1977)). Thus, "a prior judicial (mis)construction of a statute does not '*insulate*' the Louisiana judge . . . from returning to the legislation itself to ascertain its correct meaning and application." Albert Tate, Jr., *Civilian Methodology in Louisiana*, 44 TUL. L. REV. 673, 678 (1976).

As Justice Dennis explained, in Louisiana, legislation "is the primary source of law, and precedent serves merely as an example of a prior judge's interpretation and application of legislated law." James L. Dennis, *Interpretation & Application of the Civil Code & the Evaluation of Judicial Precedent*, 54 LA. L. REV. 1, 3 (1993). The function of every legal concept contained in the statutes "is to delimit contradictory or competing interests, and to decide the contest between two or more such interests." *Id.* at 9.

> In creating a legal rule or concept, the legislator also considers ethical, religious, moral interests, the interest of justice, of equity, of the public, and the highest interests of human kind. Although we may disagree vigorously over which interest should prevail or be vanquished in a

> particular case, it is self-evident that every statute affects these kinds of interests.

*Id.* at 9-10 (footnotes omitted). When the legislature has weighed the involved interests and formed a rule based on this evaluation, "the judge is absolutely bound by the legislator's delimitation of those interests, no matter if the judge himself would reach a different result." *Id.* at 10.

Justice Dennis concluded that "[i]t should be evident that the common-law or case-law theory of precedent is incompatible in many ways with the legal method of deciding a case . . . ." *Id.* at 14. Furthermore, the civil law method should be applied to determine "whether the case should be imitated in a subsequent decision." *Id.* at 15. Thus, "if a judge ignores a clearly applicable Code rule and follows another jurisdiction's case, his example of using the wrong starting point or source of law should not be influential at all." James L. Dennis, *Interpretation & Application of the Civil Code & the Evaluation of Judicial Precedent*, 54 LA. L. REV. 1, 15 (1993).

The law should be applied as written if it is clear, unambiguous and does not lead to absurd consequences. *Martin v. Safeway Ins. Co. of La.*, 08-1419 (La.App. 3 Cir. 4/15/09), 26 So.3d 777. "Laws on the same subject matter must be interpreted in reference to each other." La.Civ.Code art. 13. This means that where statutory provisions are in conflict, laws in pari materia should be construed together and harmonized, if possible. *Killeen v. Jenkins*, 98-2675 (La. 11/5/99), 752 So.2d 146.

The courts presume that the legislature "enacted the law with full knowledge of all other laws pertaining to the same subject matter" and that "every provision of law was intended to serve some useful purpose . . . ." *Martin,* 26 So.3d at 780 (quoting *Ransome v. Ransome*, 01-2361 p. 8 (La.App. 1 Cir. 6/21/02), 822

So.2d 746, 754). Courts do *not* presume that "**the lawmaker intended for any part of a law to be meaningless** . . . ." *Id.*

The public policy of the State is a limit on one's freedom to form an enforceable contract. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972). Our legislature, the primary and superior source of the law in this state, has declared: "[a]n objection to the venue may not be waived prior to the institution of the action." La.Code Civ.P. art. 44(A). In addition, our legislature stated in La.R.S. 51:1407(A) (emphasis added):

> *It being against the public policy of the state of Louisiana* to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, *no* provision of *any* contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of *any* civil action, may be enforced against *any* plaintiff in an action brought in these courts.

The public policy stated in La.R.S. 51:1407(A) is not being declared in that statute. Instead, the legislature refers to the already-existing public policy and applies it to the situations the Unfair Trade Practices Act (UTPA) addresses: "it *being* against the public policy . . . ." The Louisiana Code of Civil Procedure Article 44(A) by stating that an objection to venue may not be waived prior to the institution of an action is an explicit expression of the legislative will from which La.R.S. 51:1407(A) derives its policy statement. Therefore, that the restatement of the policy appears in the UTPA does not mean it is not a public policy outside of UTPA. Moreover, the language in La.R.S. 51:1407(A) such as "any contract," "any civil action," and "any plaintiff" indicates that the policy is far from being limited to the claims based on the UTPA.

The question remains, nevertheless, of the significance of La.R.S. 9:2779 where the legislature declared forum selection clauses against public policy when the

18

construction contract involves a Louisiana domiciliary and the work is to be done in Louisiana. At first blush, this statute implies that forum selection clauses are unenforceable as against public policy only under certain circumstances. In the case of La.R.S. 9:2779, only when one of the parties is a Louisiana domiciliary and the work is to be done in Louisiana is it so.

Yet, this interpretation would render La.Code Civ.P. art. 44(A) nugatory.[8] This interpretation, by *implicitly* making all forum selection clauses generally enforceable, would also conflict with the *explicit* pronouncement in La.R.S. 51:1407(A) that it is against public policy of Louisiana to allow contractual selection of venue contrary to the Code of Civil Procedure.

On the other hand, if La.Code Civ.P. art. 44(A), which is clear and unambiguous, means exactly what it plainly states, why would the legislature enact La.R.S. 9:2779? Louisiana Code of Civil Procedure Article 44(A)'s prohibition of forum selection has a temporal component to it; it prohibits waiver of the objection to venue "*prior* to the institution of the action." (Emphasis added). Thus, the Code of Civil procedure allows the waiver of objections to venue *after* the suit is filed, unless it is one of the actions specified in La.Code Civ.P. art 44(B).

On the other hand, if the requirements of La.R.S. 9:2779 are satisfied, then the venue selection outside of this state is against public policy. "The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy." La.Civ.Code art. 1968. "An obligation cannot exist without a lawful cause." La.Civ.Code art. 1966. Thus, the parties whose circumstances fit under La.R.S. 9:2779 may not consent to venue

---

[8]In their supplemental brief, Appellees would limit La.Code Civ.P. art. 44(A) to those situations listed in La.Code Civ.P. art. 44(B). This interpretation would also render La.Code Civ.P. art. 44(A) nugatory. Moreover, La.Code Civ.P. art. 44(A) disallows waiver of objection to venue *before* an action is instituted. On the other hand, La.Code Civ.P. art. 44(B) covers those situations in which venue may never be waived whether before or after the litigation commences.

outside of this state even after the litigation has started as such an agreement would violate the public policy of this State.

Moreover, unlike La.Code Civ.P. art. 44(A) which controls only venue issues, La.R.S. 9:2779, in addition to prohibiting the selection of forum outside of Louisiana, forbids application of another state's laws to decide the case. Thus, while La.R.S. 9:2779 and La.Code Civ.P. art. 44(A) address similar issues, La.R.S. 9:2779 has a more comprehensive coverage while including only a certain class of litigants, and La.Code Civ.P. art. 44(A) applies to all litigants but covers the limited area of venue. Unlike La.R.S. 9:2779, La.Code Civ.P. art. 44(A) does not address the conflict of laws issues.

Because our goal, under the statutory interpretation principles, is not to render a statute nugatory and to construe together and harmonize, if possible, laws in pari materia, we conclude that the legislature broadened the policy clearly stated in La.Code Civ.P. art. 44(A) by enacting La.R.S. 9:2779 but applied that broad policy to the litigants that satisfy its requirements. The litigants who do not satisfy the requirements of La.R.S. 9:2779 may not claim its broad protection; nevertheless, they may rely on the more limited in scope La.Code Civ.P. art. 44(A).

This case does not fall within La.R.S. 9:2779 because none of the parties in this case is a Louisiana domiciliary. Thus, the general provisions of the Code of Civil Procedure with respect to venue apply. La.Code Civ.P. art. 44(A) clearly and unambiguously prohibits waiver of the Code's venue provisions prior to the institution of the action. The contract at issue here purported to waive the venue provisions of Louisiana Code of Civil Procedure in advance of the litigation. Therefore, the waiver is not enforceable.

We decline to accept the holdings from our sister-jurisdictions that make forum selection clauses enforceable in this state. None of those decisions examined

20

the primary source of law of this state, i.e., La.Code Civ. P. art. 44(A), and relied, instead, on the Supreme Court's pronouncements. Yet, it is the Supreme Court which declared that forum selection clauses are unenforceable when the "enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision."[9] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 15, 1916 (1972).

Thus, the starting point of any judicial decision on the issue must begin with the examination of whether there exists a public policy prohibiting enforcement of forum selection clauses in Louisiana. This court has failed to find any such case. Thus, we adopt the words of Justice Dennis: "if a judge ignores a clearly applicable Code rule and follows another jurisdiction's case, his example of using the wrong starting point or source of law should not be influential at all." James L. Dennis, *Interpretation & Application of the Civil Code & the Evaluation of Judicial Precedent*, 54 LA. L. REV. 1, 15 (1993).

The examination of the two supreme court cases which touched upon the issue of forum selection clauses, leads to the conclusion that they are also of limited, if any, consequence. First, in *Lejano*, 705 So.2d 158, the supreme court applied the federal law, not Louisiana law, as it was an admiralty action. Second, in *Power Marketing Direct, Inc.*, 938 So.2d 662, there is one sentence that forum selection clauses are enforceable in Louisiana with a citation to *Lejano*. This pronouncement in *Power Marketing Direct* was a dictum because the party insisting on the unenforceability of the forum selection clause consented to the jurisdiction of another court *after* the litigation began.

---

[9]In fact, there are several states where the enforcement of forum selection clauses is against public policy.

Finally, consistent with the civil law tradition where the tribunal can always change its mind, this court disavows its statements made in *Calahan*, 732 So.2d 796. The specific issue in that case was whether the forum selection clause conferred personal jurisdiction on this court in the absence of any other contacts with the State. *Id.* Nevertheless, this court implicitly held and explicitly stated that forum selection clauses are generally enforceable even though the clause at issue was not enforceable under the factual circumstances of the case. *Id.* We now declare that the statement relating to the enforceability of forum selection clauses in *Callahan* was inaccurate.[10]

---

[10]Even if we were to follow the jurisprudence instead of the solemn expression of the legislative will, the conclusion will, nevertheless, be the same. First, because Appellees failed to answer the appeal, we need not consider the implicit trial court's holding that the venue for the lien actions is proper in Louisiana. Thus, the issue is whether the lien cause of action and the contract breach claim should be split. We conclude that even if forum selection clauses were not against public policy, the clause's enforcement under the circumstances of this case would be against public policy. This is because the enforcement would require to split the litigation between *two states*.

Unlike *Case Atlantic Co.*, 960 So.2d 1274, an action involving summary and ordinary proceedings, this case would involve two ordinary proceedings, i.e, the contract breach and lien enforcement. Moreover, unlike *Case Atlantic* where both actions were within the state of Louisiana and, therefore, the inconvenience associated with the enforcement of the clause was small compared to the benefit derived, enforcement of the forum selection clause here would require two separate lawsuits in two different states arising out of the same dispute. Very similar factual issues would have to be determined in both the lien action and the contract breach action, i.e., what Live Oak did on the project, how much the materials and labor cost, etc. In addition, the court in *Case Atlantic* was concerned about the inconvenience to the party who brought the concursus proceeding and whose summary action would have to be converted to the ordinary one. Here, no such parties exist.

Furthermore, the inconvenience in this case would, indeed, be considerable. Unlike cases where the litigant simply had to go to another state to litigate under the forum selection clause, our litigant would have to litigate here *and* in another state.

We also note that the subject of the dispute is located in Louisiana. All of the work involved in the dispute was performed in Louisiana. Thus, almost all evidence and witnesses would be located in Louisiana. Based on the totality of circumstances and that Louisiana disfavors multiplicity of actions and piecemeal litigation, it would be against public policy to enforce the forum selection clause in this case even if forum selection clauses were generally enforceable.

V.

## **CONCLUSION**

Summary judgment in favor of White-Spunner Construction, Inc., Hartford Fire Insurance Company, and Wal-Mart Stores, Inc. is reversed. The grant of exception of improper venue is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to White-Spunner Construction, Inc., Hartford Fire Insurance Company, and Wal-Mart Stores, Inc..

**REVERSED AND REMANDED.**