STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

LOUISIANA PIGMENT COMPANY, L.P.

VERSUS

AIR LIQUIDE AMERICA, L.P. AND
AIR LIQUIDE LARGE INDUSTRIES, US L.P.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-2617
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

**JIMMIE C. PETERS
JUDGE**

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, J. David Painter, James T. Genovese, and John E. Conery, Judges.

**REVERSED AND RENDERED.**

**James M. Garner**
**Debra J. Fischman**
**Jennifer H. Mabry**
**Sher Garner Cahill Richter Klein & Hilbert, L.L.C.**
**909 Poydras Street**
**Twenty-Eighth Floor**
**New Orleans, LA 70112**
**(504) 299-2100**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **Air Liquide America, L.P.**
      **Air Liquide Large Industries, US L.P.**

**Rudie R. Soileau, Jr.**
**Hunter W. Lundy**
**Daniel A. Kramer**
**Lundy, Lundy, Soileau & South LLP**
**501 Broad Street**
**Lake Charles, LA 70601**
**(337) 439-0707**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Louisiana Pigment Company, L.P.**

**PETERS, J.**

This litigation involves a contract dispute over the sale and delivery of oxygen and nitrogen to a Louisiana facility currently operated by the plaintiff, Louisiana Pigment Company, L.P. The defendants in this litigation, Air Liquide America, L.P. and Air Liquide Large Industries, US L.P., appeal the trial court's denial of their declinatory exception of improper venue. For the following reasons, we reverse the trial court judgment and render judgment granting the exception of improper venue and dismissing the lawsuit of Louisiana Pigment Company, L.P. against Air Liquide America, L.P. and Air Liquide Large Industries, US L.P., but without prejudice.

## DISCUSSION OF THE RECORD

The litigation has as its origin a September 1, 1990 contract between Big Three Industrial Gas, Inc. (Big Three) and Kronos Louisiana, Inc. (Kronos), both Delaware corporations. In the contract, Big Three agreed to deliver oxygen and nitrogen to a Kronos' Calcasieu Parish chemical manufacturing facility for use in its manufacturing process. The contract identified the point of delivery and ownership transfer of the oxygen and nitrogen as Big Three's meters, located inside Kronos' Calcasieu Parish facility, and provided that the oxygen and nitrogen originating from various plants owned by Big Three would to be transported to Kronos' facility through a pipeline system running along the Texas and Louisiana Gulf Coast.

On September 23, 1993, Louisiana Pigment Company, L.P. (Louisiana Pigment) came into being as a limited partnership, with Kronos and Toxide America, L.L.C. (Toxide) as partners in the endeavor. On the same day Louisiana Pigment was created, Kronos assigned the September 1, 1990 contract to it with the acceptance and concurrence of Big Three. By January of 1994, Big Three

Industrial Gas, Inc. came to be identified as Big Three Industries, Inc., an Air Liquide Group Company. Immediately thereafter, Air Liquide America, L.P. (Air Liquide America) became the party at interest in the contract.

On November 25, 2002, Air Liquide America submitted a price schedule to Louisiana Pigment, to take effect on January 1, 2003, for prices affecting "the use of supplemental, excess, liquid, or peaking product per the provisions of your agreement with Air Liquide." It informed Louisiana Pigment that this supplemental rate would not apply to normal deliveries of its product. On September 23, 2004, Air Liquide America assigned the contract to Air Liquide Large Industries, US L.P. (Air Liquide US), effective January 1, 2005. Louisiana Pigment recognized the existence of this assignment on September 30, 2004.

The original term of the contract ran through January 1, 2007. However, a May 1, 1998 amendment extended the term through January 1, 2010, with one-year increments to be effective thereafter until either party provided written notice of termination. Upon written notice of termination, the contract would extend through the remainder of that year and the next complete year. On December 13, 2010, Air Liquide US provided Louisiana Pigment with written notice that it was terminating the contract, effective January 1, 2012.

On June 15, 2012, Louisiana Pigment filed suit against Air Liquide America and Air Liquide US, asserting that since delivery of the January 1, 2003 price schedule by Air Liquide America, the two entities had manipulated the delivery meters so that the higher supplemental rate applied for what was actually normal deliveries of oxygen and nitrogen. Louisiana Pigment further asserted that between January 1, 2003 and January 1, 2012, Air Liquide America and Air

2

Liquide US had assessed it with excessive electrical power charges based on the categorization of the deliveries at issue in the litigation.

Air Liquide America and Air Liquide US responded to the original petition by filing a declinatory exception of improper venue based on Section 20.1 of the September 1, 1990 contract, which reads as follows:

> This Agreement shall be governed by and construed in accordance with the laws of Texas and shall be performed in Harris County, Texas. It is expressly stipulated and agreed that the District Courts of Harris County, Texas, and the Federal District Court for the Southern District of Texas shall have exclusive jurisdiction and venue of all proceedings based on or arising out of this Agreement.

Following a March 6, 2013 hearing, the trial court denied the exception and certified the ruling as a final and immediately appealable judgment. On March 22, 2013, the trial court executed a judgment conforming to its ruling. Thereafter, Air Liquide America and Air Liquide US perfected this appeal, asserting the following assignments of error:

1. The district court erred in denying [the defendants'] declinatory exception of improper venue, as the parties here executed a valid contract with an unambiguous forum-selection clause designating Texas courts as the exclusive and mandatory venue for actions such as this one.

2. The district court erred to the extent that it applied Louisiana law to determine the enforceability of the contract's forum-selection clause, as the contract's choice-of-law clause provides that it shall be governed by and construed in accordance with Texas law.

3. The district court erred to the extent it engaged in a conflict-of-laws analysis under Louisiana Civil Code article 3537 to determine what state's law applies to the contract at issue, because article 3537 "applies in the absence of an effective choice of law by the parties," and the parties' effective choice of Texas law here, as memorialized in their contract, makes article 3537 inapplicable.

4. The district court erred to the extent it found that article 3537's relative impairment test weighed in favor of application of Louisiana law, as opposed to Texas law.

3

5. The district court erred to the extent it found that Louisiana has a strong public policy against enforcing forum-selection agreements, despite the fact that four out of five Louisiana Circuits have held, and the Louisiana Supreme Court has recognized, that forum-selection agreements are *prima facie* valid and enforceable in Louisiana.

(Footnotes to assignments omitted.)

## OPINION

The declinatory exception of improper venue is provided for by La.Code Civ.P. art. 925(A)(4). An appeal from a judgment denying an exception of improper venue presents a question of law, and we review the record de novo in order to determine whether the trial court's denial of the exception was legally correct. *Henry v. Anderson*, 10-941 (La.App. 3 Cir. 3/9/11), 60 So.3d 1285, *writ denied*, 11-1294 (La. 9/23/11), 69 So.3d 1166. The only issue before us is whether Section 20.1 of the September 1, 1990 contract is valid and enforceable, and all of the assignments of error address that issue. Therefore, we will consider all of the assignments together. Additionally, for the purpose of addressing this issue, we will refer to Air Liquide America and Air Liquide US collectively as Air Liquide.

The March 6, 2013 hearing established that Louisiana Pigment is a Delaware limited partnership whose principal (and only) place of business is in Calcasieu Parish; that Kronos, a Delaware corporation having a principal place of business in Texas, is one of the partners in Louisiana Pigment; that Air Liquide has facilities in both Louisiana and Texas; and that all billing and contract notices from Air Liquide to Louisiana Pigment originated in Texas. The parties agreed in argument to the trial court that except for the application of the Section 20.1, the contract itself was voluntarily entered into and is a valid contract. Louisiana Pigment argued to the trial court that Section 20.1 is unenforceable, and Air Liquide took the opposite position. However, in arguing the unenforceability of the forum

4

selection clause, Louisiana Pigment specifically acknowledged that it did not take the position that it had been required to accept Section 20.1 as part of the contract because of fraud or duress. Instead, Louisiana Pigment relied on this court's decision in *Thompson Tree & Spraying Service, Inc. v. White-Spunner Construction, Inc.*, 10-1187 (La.App. 3 Cir. 6/1/11), 68 So.3d 1142, *writ denied*, 11-1417 (La. 9/30/11), 71 So.3d 290, wherein a panel of this court held that forum selection clauses are unenforceable as being against Louisiana public policy. The trial court followed *Thompson* in rejecting Air Liquide's exception of improper venue.

The *Thompson* litigation arose from the construction of a Wal-Mart retail store in Alexandria, Louisiana, and involved a suit for damages by a subcontractor against a contractor. The subcontract at issue contained a clause which stated that the subcontract had been entered into in Mobile County, Alabama, and further provided that any litigation between the parties would be brought in the Mobile County Circuit Court. The subcontractor brought his suit in the Ninth Judicial District Court in Rapides Parish, Louisiana, and was met with an exception of improper venue as well as other requests for relief from the suit. The trial court dismissed the Louisiana Private Works Act (LPWA) claims as being untimely and granted the exception as to the breach of contract claim and dismissed the subcontractor's suit.

This court in *Thompson* initially reversed the trial court's dismissal of the LPWA claims and then turned to the question involving enforceability of forum selection clauses in general. In holding that all forum selection clauses are unenforceable in this state as being against public policy, the court relied primarily on La.Code Civ.P. art. 44(A), which provides that "[a]n objection to the venue may

5

not be waived prior to the institution of the action." In doing so, the court acknowledged that forum selection clauses have been found to be legal and enforceable by Louisiana courts in three situations:

> There are several appellate courts which have concluded that forum selection clauses are legal and binding in Louisiana unless the resisting party clearly shows that the enforcement would be unreasonable and unjust, that the clause arises from fraud or overreaching, or that the enforcement would contravene a strong public policy. *E.g., Case Atl. Co. v. Blount Bros. Constr., Inc.*, 42,251 (La.App. 2 Cir. 6/20/07), 960 So.2d 1274, *writ denied*, 07-1541 (La.10/12/07), 965 So.2d 403.

*Id.* at 1151-52.

This court in *Thompson* further acknowledged that the Louisiana Supreme Court pronounced forum selection clauses enforceable in *Lejano v. Bandak*, 97-388 (La. 12/12/97), 705 So.2d 158, *cert. denied*, 525 U.S. 815, 119 S.Ct. 52 (1998), and *Power Marketing Direct, Inc. v. Foster*, 05-2023 (La. 9/6/06), 938 So.2d 662,[1] but noted that in *Lejano*, the decision involved the application of federal law in a maritime setting; and that in *Power Marketing*, the supreme court's language on the issue was merely dictum as the supreme court was not required to reach that issue in rendering its decision. Thus, this court concluded that "[t]he supreme court has not addressed the issue explicitly[.]" *Thompson*, 68 So.3d at 1152.

Additionally, in *Thompson*, this court specifically addressed our previous ruling in *Calahan v. Haspel*, 99-44 (La.App. 3 Cir. 5/5/99), 732 So.2d 796, wherein a panel of this court had declared forum selection clauses generally enforceable, although not enforceable in that particular case, given the facts before it. The *Thompson* panel concluded "that the statement relating to the enforceability

---

[1] In *Power Marketing*, 938 So.2d at 675, the supreme court also recognized the three exceptions as being "that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching."

of forum selection clauses in *Callahan* [sic] was inaccurate." *Thompson*, 68 So.3d at 1156.

In reaching its conclusion in *Thompson*, this court also noted that La.R.S. 9:2779 and La.R.S. 51:1407 specifically hold forum selection clauses invalid in the factual situations they govern.

Louisiana Revised Statutes 9:2779(A) (emphasis added) provides:

The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, *when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state*, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction *are inequitable and against the public policy of this state.*

With regard to the agreements described in La.R.S. 9:2779(A), the statute further provides that the legislature declares any contractual provision which attempts to require an out-of-state arbitration of disputes or an interpretation of the agreement pursuant to the laws of another jurisdiction to be "null and void and unenforceable as against public policy[.]" La.R.S. 9:2779(B). However, the statute does contain an exception to this public policy determination in La.R.S. 9:2779(D), which provides that "[n]otwithstanding any other provisions of law to the contrary, the provisions of this Section shall not apply to negotiated labor contracts."

Louisiana Revised Statutes 51:1407(A), which is a part of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), establishes the role of the attorney general in enforcing the UTPCPL as well as the appropriate venue for his or her enforcement power to be implemented:

*Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act, or practice declared by R.S. 51:1405 to be unlawful, he may bring an action for injunctive relief in the name of the state against such person*

7

*to restrain and enjoin the use of such method, act, or practice.* The action may be brought in the district court having civil jurisdiction in any parish in which such person resides, or is domiciled or has his principal place of business, or in any parish in which such person did business, or, with consent of the parties, may be brought in the district court of the parish where the state capitol is located. In the event these district courts are not operational due to a declared state of emergency, the action shall be brought in an operating judicial court located closest in geographic distance to the Nineteenth Judicial District Court in the parish of East Baton Rouge. In the event that such person was located outside of the state, but was soliciting in the state by mail, telephone, or any electronic communication, the action may be brought in the district court having civil jurisdiction in the parish in which the contact was made. *It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts.* These courts are authorized to issue temporary restraining orders or preliminary and permanent injunctions to restrain and enjoin violations of this Chapter, and such restraining orders or injunctions shall be issued without bond.

(Emphasis added.)

After identifying legislation and custom, as the two sources of law in Louisiana; quoting from the noted jurists of our state, Justices Albert Tate, Jr. and James L. Dennis, as well as the eminent legal professors, Professors Marcel Planiol and A. N. Yiannopoulos, on the role of legislation and judicial opinions in the civilian law; and after considering the role of the legislature in enacting multiple laws addressing the same subject, the court in *Thompson* reiterated the basic standard of statutory construction found in La.Civ.Code art. 9: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." The court then stated that "[l]aws on the same subject matter must be interpreted in reference to each other." La.Civ.Code art. 13. Finally, the court noted that, "[t]he courts presume that the legislature

8

'enacted the law with full knowledge of all other laws pertaining to the same subject matter' and that 'every provision of law was intended to serve some useful purpose[.]'" *Thompson*, 68 So.2d at 1154 (quoting *Martin v. Safeway Ins. Co. of La.*, 08-1419, p. 4 (La.App. 3 Cir. 4/15/09), 26 So.3d 777, 780 (quoting *Ransome v. Ransome*, 01-2361, p. 8 (La.App. 1 Cir. 06/21/02), 822 So.2d 746, 754)).

This analysis led the court in *Thompson* to the application of the basic rule provided in La.Code Civ.P. art. 44(A) that "[a]n objection to the venue may not be waived prior to the institution of the action[,]" and the decision that all forum-selection clauses are against Louisiana public policy. The contractor in *Thompson* sought writs from the supreme court; however, as previously noted, writs were denied. *Thompson Tree & Spraying Serv., Inc. v. White-Spunner Const., Inc.*, 11-1417 (La. 9/30/11), 71 So.3d 290. Since this court's decision in *Thompson*, two decisions have been rendered in other circuits refusing to extend the language of La.R.S. 51:1407(A) beyond the realm of Louisiana UTPCPL matters.

The first of these two cases is *Rising Resources Control, Inc. v. KIE Commodities and Finance, L.L.C.*, 11-1026 (La.App. 1 Cir. 12/21/11), 80 So.3d 1217, *writ denied,* 12-658 (La. 4/27/12), 86 So.3d 632. In this case, the plaintiff entered into a contract with a Michigan company for the purchase of scrap metal from the defendant's leased Louisiana premises. The contract included a forum selection clause providing for venue in Michigan. The plaintiff filed suit in Louisiana, and the defendant objected to venue. The trial court sustained the objection and dismissed the plaintiff's suit. The plaintiff appealed the trial court's decision, relying on *Thompson*, and, on appeal, the first circuit stated:

> The [*Thompson*] court found that although the referenced public policy language appears in the Louisiana Unfair Trade Practices Act (UTPA), the language utilized in the statute "indicates that the policy is far from being limited to the claims based on the UTPA."

9

*Thompson Tree & Spraying Service, Inc.*, 10-1187 at p. 18, 68 So.3d at 1154. The third circuit also noted that LSA-C.C.P. art. 44(A) does not allow venue to "be waived prior to the institution of the action." The court further declared that its prior statement in *Calahan v. Haspel*, 99-44 (La.App. 3 Cir. 5/5/99), 732 So.2d 796, that "forum selection clauses are generally enforceable" was inaccurate. *Thompson Tree & Spraying Serv., Inc.*, 10-1187 at p. 22, 68 So.3d at 1156.

In contrast, this court has previously recognized a more limited view, although recognizing that "the public policy of this state does militate against the use of forum-selection clauses in employment contracts, La. R.S. 23:921(A)(2), and in consumer transactions and cases of unfair trade practices, La. R.S. 51:1407." *Vallejo Enterprise, L.L.C.*[ *v. Boulder Image, Inc.*], 05-2649 at p. 6 [(La.App. 1 Cir. 11/3/06)], 950 So.2d [832,] 837. However, this court did not expand LSA-R.S. 51:1407(A) beyond its context of the UTPA and noted that plaintiff "pointed to no authority supporting a proposition that commercially sophisticated parties may not limit their disputes to any forum of their choosing." *Id.* This court, finding no contravention of public policy, affirmed the trial court's grant of an exception of improper venue in a suit brought by a Louisiana distributor against an Arizona manufacturer wherein a choice of law provision required that any suits be instituted in the state of Arizona. *See also Dillon v. Bankers Ins. Co.*, 09-1121, 2010 WL 502838 (La.App. 1 Cir. 2/12/10) (unpublished opinion).

Although the third circuit has interpreted the public policy declared in LSA-R.S. 51:1407(A) to extend beyond the context of the UTPA to all civil proceedings, we decline to do so and follow our prior holding in *Vallejo Enterprise, L.L.C.*

*Id.* at 1220-21.

As previously noted, the supreme court denied the plaintiff's application for supervisory writs.

In *Fidelak v. Holmes European Motors, L.L.C.*, 47,915 (La.App. 2 Cir. 2/27/13), 111 So.3d 456, an allegedly defective engine was sold by the third-party defendant to the third-party-plaintiff automotive center. The invoice at issue stated that the defendant's terms and conditions could be found on its website. Included in these terms and conditions was a forum-selection clause which required litigation to take place in Harris County, Texas. After the trial court sustained the

third-party defendant's exception of improper venue, the third-party plaintiff appealed, arguing, in part based on *Thompson*, that forum-selection clauses are unenforceable as being against public policy. In affirming the trial court's grant of the venue exception, the second circuit also declined to follow *Thompson* in expanding the language of La.R.S. 51:1407(A) outside of UTPCPL claims. Specifically, the second circuit stated:

> We find that the cited statutes were intended to protect consumers who contract from disadvantageous bargaining positions, not to apply to all contracts of every type. To apply the prophylactic restrictions of [UTPCPA] to the instant situation is overreaching. The parties contracted in good faith in a commercial transaction, and a deal is a deal.

*Id*. at 459.

The supreme court granted the third-party plaintiff's application for supervisory writs in this matter. *Fidelak v. Holmes European Motors, L.L.C.*, 13-691 (La. 5/17/13), 118 So.3d 378. However, in rendering its opinion to reverse the trial court and second circuit, the supreme court did not resolve the forum-selection issue. Instead, the supreme court concluded that "a third party defendant may not object to venue where the principal action has been instituted in the proper venue." *Fidelak v. Holmes European Motors, L.L.C.*, 13-691, p. 1 (La. 12/10/13), 130 So.3d 851, 852. With regard to the forum-selection issue, the supreme court noted that the issue of "[w]hether such clauses are valid under Louisiana law has never been squarely before us[,]" but that "because of the procedural posture of this case, it is not necessary for us to decide this difficult issue." *Id*. at 853-54.

Subsequent to its decision in *Fidelak*, the supreme court rendered its decision in *Shelter Mutual Insurance Co. v. Rimkus Consulting Group, Inc. of Louisiana*, 13-1977 (La. 7/1/14), __ So.3d __, wherein it squarely addressed the question of whether forum selection clauses were per se violations of public policy

11

in Louisiana. After reviewing the jurisprudence relative to such clauses, the supreme court held that forum selection clauses are prima facie valid in Louisiana. Specifically, the supreme court stated:

> We hold that such clauses should be enforced in Louisiana unless the resisting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching . . . [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

*Id.* at _____ (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 92 S.Ct. 1907 (1972)).

In the matter now before us, Louisiana Pigment does not claim application of any of the exceptions set forth above. Instead, it relies solely on the holding in *Thompson* that Louisiana has a public policy against enforcement of all forum selection clauses. That being the case, we reverse the trial court's denial of the declinatory exception of improper venue and render judgment granting the exception and dismissing the lawsuit of Louisiana Pigment. Although we normally would allow Louisiana Pigment the opportunity to amend its petition in order to remove the grounds pled in the exception of improper venue, such a step in this instance would be "a vain and useless act." *Vallejo Enterprises, L.L.C.*, 950 So.2d at 838. The only action that will remove Air Liquide's objection is a transfer to a court of proper jurisdiction and venue. As it is impossible for this court to transfer this matter to a Texas court, we dismiss Louisiana Pigment's lawsuit without prejudice so that it may be refiled in the proper jurisdiction.

## DISPOSITION

For the foregoing reasons, we reverse the trial court judgment rejecting the declinatory exception of improper venue filed by Air Liquide America, L.P. and Air Liquide Large Industries, US L.P. and render judgment granting the exception

and dismissing the lawsuit of Louisiana Pigment Company, L.P. against Air Liquide America, L.P. and Air Liquide Large Industries, US L.P., without prejudice. We assess all costs of this litigation to Louisiana Pigment Company, L.P.

**REVERSED AND RENDERED.**