779 So.2d 99 (2001)
TULANE INDUSTRIAL LAUNDRY, INC.
v.
QUALITY LUBE & OIL, INC.
No. 2000-CA-0610.
Court of Appeal of Louisiana, Fourth Circuit.
January 24, 2001.
*100 Kenneth H. Laborde, Sharon D. Smith, Pulaski, Gieger & Laborde, New Orleans, LA, Counsel for Plaintiff/Appellant.
Francis J. Lobrano, Shawn D. Sentilles, Lobrano & Lobrano, L.L.C., Belle Chasse, LA, Counsel for Defendant/Appellee.
Court composed of KIRBY, LOVE and GORBATY, Judges.
GORBATY, Judge.
In this appeal, Tulane Industrial Laundry ("Tulane") contends that the trial court erred in granting Quality Lube and Oil's ("Quality") exception of lack of personal jurisdiction. For the reasons set forth below, we affirm.

FACTS AND PROCEEDINGS BELOW
In or before March 1997, a sales representative of Tulane, a Louisiana corporation, appeared on an unsolicited basis at Quality's McComb, Mississippi shop and requested that Quality, a Mississippi corporation, begin renting employee uniforms, shop towels, and fender covers from Tulane. On March 20, 1998, the owner of Quality, Kenneth Robinson, met with the Tulane sales representative at Quality's McComb shop to switch Quality's uniform rental account to Tulane. Robinson signed a contract in which the parties agreed that Tulane would furnish to Quality garments and merchandise. The contract also provided that its provisions "shall be governed by the laws of the State of Louisiana. Customer submits itself to the jurisdiction of Orleans Parish for the purposes of litigation." (Paragraph 17 of the Contract.)
A dispute arose, and on June 2, 1999, Tulane filed a petition for damages and for breach of contract in the Civil District Court for the Parish of Orleans. On August 26, 1999, Quality filed exceptions of lack of personal jurisdiction and improper venue to Tulane's petition. Quality alleged that despite the terms of the dispute resolution clause of the contract, it could not be haled into court in Louisiana because Quality does not have minimum contacts with Louisiana. Tulane filed an opposition to Quality's exceptions on September 27, 1999, primarily asserting that Quality cannot ignore the clear and unambiguous language of the contract executed between the parties, which mandates that all disputes between the parties must be resolved in the Civil District Court for the Parish of Orleans.
Quality's exceptions were heard on October 1, 1999. At that time, the trial court maintained Quality's exception of lack of personal jurisdiction and declared Quality's exception of improper venue moot.

*101 DISCUSSION

Tulane assigns as error the trial court's finding that the dispute resolution clause contained in the contract executed between Tulane and Quality is non-binding and unenforceable.
An appellate court shall conduct a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Anderson v. Interamerican Manufacturing, Inc., 693 So.2d 210, 212 (La.App. 4 Cir.1997). Louisiana's Long-Arm Statute allows Louisiana courts to exercise personal jurisdiction over a defendant "on any basis consistent with the constitution of this state and of the Constitution of the United States." La.Rev.Stat. 13:3201(B). Thus, under current Louisiana law, "the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements." Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126, p. 5 (La.4/13/99), 731 So.2d 881, 885, cert. denied, Hollingsworth & Vose Co. v. Ruckstuhl, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999), quoting Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188 (La.1987). The constitutional due process test for determining personal jurisdiction, established by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), requires that a defendant "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Ruckstuhl, 98-1126 at 6, 731 So.2d at 885, citing International Shoe, 326 U.S. at 320, 66 S.Ct. at 160. Though the due process inquiry is considered a "one-step analysis," the following "two-part test" has developed: (1) the "minimum contacts" prong, and (2) the "fairness of the assertion of jurisdiction" prong. Ruckstuhl, 98-1126 at 6, 731 So.2d at 885. If a court determines that one (or both) of the above "prongs" is not satisfied in a given case, the suit must be dismissed for lack of personal jurisdiction.
The minimum contacts prong has been further refined by Louisiana courts, depending on the type of personal jurisdiction sought to be exercised in the case: (1) specific jurisdiction, or (2) general jurisdiction. See Babcock & Wilcox Co. v. Babcock Mexico, S.A. de C.V., 597 So.2d 110, 112 (La.App. 4 Cir.), writ denied, 600 So.2d 679 (La.1992). Generally, a state asserts specific jurisdiction "when the lawsuit arises out of the defendant's contacts with the forum." B. Glenn George, "In Search of General Jurisdiction," 64 Tul. L.Rev. 1097, 1099 (May 1990). On the other hand, a state asserts general jurisdiction when "the defendant's contacts with the forum ... are unrelated to the cause of action." Id.
When a state seeks to assert specific jurisdiction over a defendant, the minimum contacts prong of the due process analysis is satisfied "if the defendant has purposefully directed his activities at residents of the forum." de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 106 (La.1991), citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). According to the de Reyes decision, this rule "ensures that [the defendant] will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." 586 So.2d at 106. However, a non-resident defendant is considered to have minimum contacts with the forum state for purposes of general jurisdiction only if it engages in "continuous and systematic activities" in the forum. Id. at 108. Thus, this court has held that "much more substantial contacts with the forum state are required to establish general, as opposed to specific, jurisdiction." Bosarge v. Master Mike, Inc., 95-0986, p. 3 (La.App. 4 Cir. 1/31/96), 669 So.2d 510, 512, writ denied, 96-0397 (La.3/22/96), 669 So.2d 1214. In fact, the contacts must be "so substantial and of such a nature as to *102 justify suit against it on causes of action arising from dealings entirely distinct from those activities." International Shoe Co., 326 U.S. at 318, 66 S.Ct. at 159, 90 L.Ed. at 95.
Quality's business is limited solely to servicing automobiles of drive-in customers at its shops in Brookhaven and Hazlehurst, Mississippi. Quality does not do business at any location other than its shops. It does not ship or deliver products anywhere. It does not conduct business in Louisiana, nor does it own assets in Louisiana. It does not advertise or solicit business in Louisiana. Finally, Quality is not registered to do business in Louisiana and has not appointed an agent for service of process in Louisiana. Without question, Quality does not engage in any activities that might confer personal jurisdiction over it in Louisiana under a traditional minimum contacts analysis. Given this finding, it is unnecessary to address the "fairness of assertion of jurisdiction" prong of the due process analysis.
The real issue is whether, in the absence of minimum contacts, parties to a contract can agree that a particular court will have jurisdiction to decide a contractual dispute. By Acts 1997, No. 943, § 1, La.Rev.Stat. 51:1407 of the Louisiana Unfair Trade Practices Act was amended to provide, in part:
It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts.
The 1997 amendment to La.Rev.Stat. 51:1407 was directed toward nonresidents who solicit business from Louisiana residents by mail, telephone and electronic communications. See e.g. Lejano v. K.S. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158, cert den. 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). The amendment was intended to permit Louisiana residents to maintain actions against such nonresident solicitors in Louisiana courts, even where a forum selection agreement prohibited such action. Id.
In Lejano, the Louisiana Supreme Court clearly limited its interpretation of La. Rev. Stat. 51:1407 to the maritime context, stating:
Act 943 [the 1997 Amendment] was clearly not intended to apply to forum selection clauses in maritime law cases... it does not forbid forum selection clauses as against public policy as they relate to maritime law causes of action. Accordingly, we find that Act 943 is inapplicable to the facts of this case.
705 So.2d at 171.
While the amendment was directed at protecting Louisiana residents from out-of-state solicitors, the broad statement of public policy in La.Rev.Stat. 51:1407 is expansive, and appears to leave no question that it is against the public policy of Louisiana to allow waiver of jurisdiction and venue in advance of the filing of an action. It would be fundamentally unfair to interpret that statute in a manner that would permit solicitors residing in Louisiana, such as Tulane, to bind nonresidents to suit in Louisiana courts, while prohibiting nonresident solicitors from binding Louisiana residents to suit outside of Louisiana.
We find that, in the absence of minimum contacts, parties to a contract cannot agree that a particular court will have jurisdiction to decide a contractual dispute. The forum selection clause contained in the contract is thus unenforceable.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.