# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #035

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **1st day of July, 2014**, are as follows:

**BY JOHNSON, C.J.**:

2013-CC-1977    SHELTER MUTUAL INSURANCE COMPANY v. RIMKUS CONSULTING GROUP, INC. OF LOUISIANA, ET AL. (Parish of Lafayette)

Accordingly, for the foregoing reasons, the judgments of the lower courts overruling Rimkus' declinatory exception of venue are reversed.
REVERSED AND RENDERED.

VICTORY, J., dissents and assigns reasons.
KNOLL, J., dissents for reasons assigned by Justice Victory.
WEIMER, J., dissents for the reasons assigned by Justice Victory.
HUGHES, J., concurs in the result.

SUPREME COURT OF LOUISIANA

NO. 2013-CC-1977

SHELTER MUTUAL INSURANCE COMPANY

VERSUS

RIMKUS CONSULTING GROUP, INC. OF LOUISIANA, ET AL.

ON SUPERVISORY WRITS TO THE FIFTEENTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF LAFAYETTE

**JOHNSON, Chief Justice**

We granted this writ application to resolve a split in the circuit courts of appeal regarding whether forum selection clauses are *per se* violative of public policy in Louisiana. Answering that question in the negative, we reverse the rulings of the lower courts.

FACTS AND PROCEDURAL HISTORY

Shelter Mutual Property Insurance Company ("Shelter") retained Rimkus Consulting Group, Inc. ("Rimkus") to provide an engineering evaluation and expert witness services in connection with its defense of litigation resulting from a claim for hurricane damages brought by a corporation insured by Shelter. Rimkus sent Shelter a letter confirming the engagement and indicating Rimkus' services were subject to its "Terms and Conditions" attached to the letter. The "Terms and Conditions" included a forum selection clause which required venue for any suits arising out of the contract to be in Harris County, Texas.

When a dispute arose, Shelter filed suit against Rimkus in the 15th Judicial District Court for the Parish of Lafayette. Shelter essentially asserted Rimkus issued an erroneous opinion relative to the cause of the property damage and failed to

properly estimate the underlying repair costs, causing Shelter to incur liability for bad faith damages and additional costs relative to further litigation.[1] Rimkus filed an exception of improper venue, arguing the forum selection clause included in its "Terms and Conditions" required suit to be brought in Texas. Shelter opposed the exception, arguing it never agreed to the unilateral "Terms and Conditions" and thus they were not part of the agreement between the parties. Further, Shelter asserted even if the "Terms and Conditions" formed part of the agreement, the forum selection clause should not be enforced because enforcement would be unreasonable, unjust, and contravene a strong public policy of Louisiana.

The trial court found the parties had tacitly agreed to be bound by the "Terms and Conditions." Recognizing a split in the circuit courts of appeal regarding whether forum selection clauses violate the public policy of this state, and being bound by the Third Circuit, the trial court overruled Rimkus' exception of improper venue citing *Thompson Tree & Spraying Serv., Inc. v. White-Spunner Const., Inc*[2] which held forum selection clauses are against the public policy of Louisiana. Rimkus applied for supervisory writs and the court of appeal denied the writ, finding no error in the trial court's ruling.[3] Rimkus filed the instant writ application in this court, which we granted.[4]

## DISCUSSION

While we granted this writ application solely to resolve the split in the circuits regarding whether forum selection clauses violate public policy in Louisiana, as a

---

[1] Craig Rogers, the Rimkus engineer assigned to the Shelter job, was also made a defendant.

[2] 10-1187 (La. App. 3 Cir. 6/1/11); 68 So. 3d 1142, *writ denied*, 11-1417 (La. 9/30/11); 71 So. 3d 290.

[3] *Shelter Mutual Insurance Co. v. Rimkus Consulting Group, Inc. of Louisiana, et al.,* 13-00283 (La. App. 3 Cir. 7/22/13) (unpublished).

[4] *Shelter Mutual Insurance Co. v. Rimkus Consulting Group, Inc. of Louisiana, et al.,*13-1977 (La. 12/6/13), 129 So. 3d 525.

2

preliminary matter we first briefly address Shelter's assertion that the "Terms and Conditions" containing the forum selection clause were not negotiated terms between the parties and therefore not part of its agreement with Rimkus.

Contrary to Shelter's contentions, we find the trial court clearly ruled the "Terms and Conditions" applied to the parties. Although the trial judge denied the exception of venue based on *Thompson Tree*, a reading of the transcript demonstrates that he also determined the "Terms and Conditions" applied. Specific to the parties' arguments relative to whether the "Terms and Conditions" were applicable, the trial judge stated "[w]ell, frankly, I'm prepared to make some decisions relative to the merits of that argument so that when it goes forward, a Court of Appeal or the Supreme Court has an opportunity to look at it." The court went on to rule:

> All right. The issue with respect to venue is denied based on the *Thompson Tree Service* case. I believe I am obligated to follow the recent dictates of the Third Circuit relative to a forum selection clause. Absent *Thompson Tree Service*, I was inclined to grant the motion. **While there is no written contract in this particular case, in looking at the details associated with the "terms and conditions" provided and without objection, and considering the prior contractual agreement between the parties, I believe that the forum selection clause would prevail.**
>
> **Of specific note is the detail of how billing would be done in the terms and conditions. And I cannot imagine that all those terms and conditions relative to billing would have been discussed by a telephone call which did no more than employ Rimkus and do expert work for this case.**
>
> **Under those circumstances, it is clearly more probable than not that the parties had agreed tacitly to return to the terms and conditions of allotment.** Nevertheless, because of the *Thompson Tree Service* case, the matter stays before me, much to my chagrin. (Emphasis added).

After reviewing the record, we agree with the trial court's ruling and hold the course of conduct between the parties supports a finding that the parties tacitly agreed the "Terms and Conditions" would be applicable to Shelter's engagement of Rimkus. The "Terms and Conditions" were sent to Shelter as part of Rimkus' confirmation letter accepting the job assignment and agreeing to provide services to Shelter. Shelter had

previously retained Rimkus for consulting services numerous times and the same "Terms and Conditions" were routinely provided as part of its job acceptance.[5] Further, on three prior occasions, the same counsel for Shelter expressly accepted these "Terms and Conditions." There is nothing in the record to indicate Shelter disputed or objected to the "Terms and Conditions" prior to opposing the exception of venue. And, as noted by the trial court, the parties acted in accordance with the "Terms and Conditions" relative to billing and payments during the job assignment. Notably, the "Terms and Conditions" is the only agreement or contract in the record which sets forth particular provisions and obligations of the parties relative to this job assignment. Finding the "Terms and Conditions" applicable, we now examine jurisprudence relative to the enforceability of forum selection clauses in Louisiana.

"A forum selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship."[6] Historically, many American courts had found such clauses to be invalid as against public policy. However, that began to change in 1972 with the United States Supreme Court's decision in *Bremen v. Zapata Off-Shore Co.*[7] In *Bremen*, the Court noted that forum selection clauses had not been historically favored by American courts and that "many courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court."[8] The *Bremen* Court rejected that viewpoint. The Court described the traditional view that forum selection clauses impermissibly oust courts

---

[5] The "Professional Fee Schedule" contained in the "Terms and Conditions" was regularly updated.

[6] *Fidelak v. Holmes European Motors, L.L.C.*, 13-0691 (La. 12/10/13), 130 So. 3d 851, 853.

[7] 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

[8] 407 U.S. at 9.

of jurisdiction as a "vestigial legal fiction."[9] The Court concluded that such clauses should be deemed presumptively valid and ordinarily enforceable, unless enforcement would be unreasonable, or the consent of the party challenging the clause was obtained through fraud or undue influence, or the chosen forum is unreasonable and seriously inconvenient.[10]

*Bremen* arose under the federal court's admiralty jurisdiction and thus does not mandate that state courts enforce forum selection provisions outside of an admiralty context. However, the Supreme Court's analysis in *Bremen* influenced the enforceability of forum selection clauses in subsequent state court litigation, including Louisiana. Prior to the Third Circuit's decision in *Thompson Tree*, our appellate courts had repeatedly held that forum selection clause are generally legal and binding in Louisiana, and anyone seeking to set one aside bears a heavy burden of proof.[11] These decisions followed the Supreme Court's reasoning in *Bremen*, and generally held forum selection clauses should be enforced, unless the resisting party proves that enforcement would be unreasonable and unjust, or that enforcement would contravene a strong public policy for the forum where the suit is brought. The Louisiana Third Circuit Court of Appeal in *Thompson Tree* reversed course on this

---

[9] *Id.* at 12.

[10] *Id.* at 13, 17-18.

[11] *See, e.g., Fidelak v. Holmes European Motors, L.L.C.*, 47,915 (La. App. 2 Cir. 2/27/13), 111 So. 3d 456, *reversed on other grounds*, 13-0691 (La. 12/10/13), 130 So. 3d 851; *Barrett Auto Brokers v. Dealer Servs. Corp.*, 45,667 (La. App. 2 Cir. 9/22/10), 48 So. 3d 322, 324, *writ denied*, 10-2381 (La. 12/10/10), 51 So. 3d 734; *Garrity Printing, LLC v. M & MMortg. Inc.*, 10-290 (La. App. 5 Cir. 11/9/10), 54 So. 3d 81, 84; *Beevers & Beevers, L.L.P. v. Sirgo*, 06-841 (La. App. 5 Cir. 2/27/07), 953 So. 2d 840, 842; *Case Atl. Co. v. Blount Bros. Const., Inc.*, 42,251 (La. App. 2 Cir. 6/20/07), 960 So. 2d 1274, 1277, *writ denied*, 07-1541 (La. 10/12/07), 965 So. 2d 403; *Town of Homer v. United Healthcare of La., Inc.*, 41,512 (La. App. 2 Cir. 1/31/07), 948 So. 2d 1163, 1167; *Vallejo Enter., L.L.C. v. Boulder Image, Inc.*, 05-2649 (La. App. 1 Cir. 11/3/06), 950 So. 2d 832, 835; *ACG Mediaworks, L.L.C. v. Ford*, 03-978 (La. App. 5 Cir. 3/30/04), 870 So. 2d 1097, 1101; *Reynolds v. Paulson*, 03-1884 (La. App. 4 Cir. 3/31/04), 871 So. 2d 1215, 1220; *Pique'-Weinstein-Pique' Architects, Inc. v. New Orleans Aviation Board*, 99-1231 (La. App. 5 Cir. 4/25/00), 762 So. 2d 76, 78, *writ denied*, 00-1483 (La. 6/30/00), 767 So. 2d 41; *Calahan v. Haspel*, 99-44 (La. App. 3 Cir. 5/5/99), 732 So. 2d 796; *Pitts, Inc. v. Ark-La Res., L.P.*, 30,867 (La. App. 2 Cir. 8/19/98), 717 So. 2d 268; *Digital Enters., Inc. v. Arch Telecom, Inc.*, 95-30 (La. App. 5 Cir. 6/28/95), 658 So. 2d 20.

standard enforcement of forum selection clauses and held that such clauses are unenforceable because they violate the Louisiana Code of Civil Procedure and the strong public policy of Louisiana.[12]

In considering the enforcement of forum selection clauses, the court in *Thompson Tree* pointed out that under a civil law system, legislation is the authoritative source of law, noting that "[t]here are two sources of law in Louisiana: legislation and custom, with legislation superceding custom in every instance."[13] The court specifically declined to accept the holdings from the other circuits making forum selection clauses enforceable in Louisiana, reasoning that none of those cases examined the primary source of law in Louisiana and instead relied on the United States Supreme Court's pronouncements.[14]

The court derived a general policy statement against forum selection clauses from La. C.C.P. art. 44(A), which provides that "an objection to the venue may not be waived prior to the institution of the action." The court further relied on La. R.S. 51:1407, which provides, in pertinent part:

> **It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure**, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts. (Emphasis added)

Although this provision is part of the Unfair Trade Practices Act ("UTPA"), the court

---

[12] Both the Louisiana Fourth Circuit and the Louisiana Fifth Circuit courts of appeal have also issued opinions refusing to enforce forum selection clauses, but those decisions are based on the particular facts of the cases and do not stand for the general proposition that forum selection clauses are *per se* violative of public policy in Louisiana. *See Tulane Indus. Laundry, Inc. v. Quality Lube & Oil, Inc.*, 00-0610 (La. App. 4 Cir.1/24/01), 779 So. 2d 99; *Gerrets v. Gerrets*, 06-0087 (La. App. 4 Cir. 1/10/07), 947 So. 2d 343; and *Aquatic Lodging, LLC v. Bayou Boys Boat Rental, LLC*, 11-382 (La. App. 5 Cir. 12/28/11), 82 So. 3d 562.

[13] 68 So. 3d at 1153.

[14] *Id.* at 1156.

in *Thompson Tree* found it was not limited to that context because the public policy stated in La. R.S. 51:1407(A) was not being declared in that statute.[15] The court noted that the "legislature refers to the already-existing public policy and applies it to the situations the Unfair Trade Practices Act (UTPA) addresses…."[16] According to the court, Article 44(A) is an "explicit expression of the legislative will from which La. R.S. 51:1407(A) derives its policy statement."[17] Thus, the court concluded the fact "that the restatement of the policy appears in the UTPA does not mean it is not a public policy outside of UTPA."[18]

The court also cited to La. R.S. 9:2779,[19] wherein the legislature declared forum selection clauses in certain construction contracts against public policy when the construction contract involves a Louisiana domiciliary and the work is to be done in Louisiana. Rather than limiting the public policy statement in that statute to situations involving such constructions contracts, the court found the statute merely expanded the temporal component of Article 44(A) by providing that "parties whose circumstances fit under La. R.S. 9:2779 may not consent to venue outside of this state

---

[15] *Id.* at 1154.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] La. R.S. 9:2779 provides, in pertinent part:

A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.

B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either: (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the Louisiana Code of Civil Procedure or other laws of this state governing similar actions.

*even after* the litigation has started as such an agreement would violate the public policy of this State."[20] However, the court ultimately determined the case did not fall within La. R.S. 9:2779 because none of the parties in the case was a Louisiana domiciliary. Thus, the court stated the general provision of the Code of Civil Procedure with respect to venue applies and Article 44(A) clearly and unambiguously prohibits waiver of the Code's venue provision prior to the institution of the action.[21] Following *Thompson Tree*, other Louisiana appellate courts have refused to follow the Third Circuit's lead.[22]

This court has discussed the enforceability of forum selection clauses in Louisiana, but has never squarely addressed the issue in light of public policy and La. C.C.P. art. 44(A). In *Lejano v. Bandak*,[23] this court applied federal law in considering the enforceability of a forum selection provision in an admiralty action. Citing *Carnival Cruise Lines, Inc. v. Shute*,[24] we noted "in admiralty cases, federal law governs the enforceability of forum selection clauses."[25] Thus, based on *Bremen*, this court stated that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."[26] Further, this court rejected an argument that La. R.S. 51:1407 invalidated the forum selection clause, pointing out that provision was part of the

---

[20] 68 So. 3d at 1155 (emphasis added).

[21] *Id.*

[22] *See Rising Res. Control, Inc. v. KIE Commodities and Fin., L.L.C.*, 11-1026 (La. App. 1 Cir. 12/21/11), 80 So. 3d 1217, *writ denied*, 12-0658 (La. 4/27/12), 86 So. 3d 632; and *Fidelak v. Holmes European Motors, L.L.C.*, 47,915 (La. App. 2 Cir. 2/27/13), 111 So. 3d 456, *reversed on other grounds*, 13-0691 (La. 12/10/13), 130 So. 3d 851.

[23] 97-388 (La. 12/12/97), 705 So. 2d 158, *cert. denied*, *Lejano v. K.S. Bandak Assuranceforeningen Gard*, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed. 2d 40 (1998).

[24] 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed. 2d 622 (1991).

[25] *Lejano*, 705 So. 2d at 166.

[26] *Id.*

Unfair Trade Practices and Consumer Protection Law and holding that La. R.S. 51:1407 "is limited in scope to transactions or interactions between out-of-state, professional telephone solicitors and Louisiana residents; therefore, it does not forbid forum selection clauses as against public policy as they relate to maritime law causes action."[27] Our holding in *Lejano* relative to the enforcement of forum selection clauses was limited to the maritime context.

In *Sawicki v. K/S STAVANGER PRINCE*,[28] this court addressed the validity of a forum selection clause in a seaman's employment contract. We considered whether the rule of *Lejano* would apply in light of the newly enacted statute, La. R.S. 23:921 A(2), which limits the enforcement of forum selection clauses contained in employment contracts. Finding the statute applied, we concluded the forum selection clause violated the state's public policy as stated in the statute. *Sawicki* applied this specific statute to the facts of that case and does not stand for the general proposition that all forum selection clauses are unenforceable in Louisiana.

Additionally, in *Power Marketing Direct, Inc. v. Foster*,[29] this court cited *Lejano* for the proposition that "forum selection clauses are legal and binding in Louisiana and should be enforced absent a clear showing that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching." However, the enforceability of a forum selection clause was not at issue in that case and thus this statement is *dicta*. Further, as explained above, *Lejano* involved the enforceability of a forum selection clause under federal law, not Louisiana law.

---

[27] *Id.* at 171.

[28] 01-0528 (La. 12/7/01), 802 So. 2d 598.

[29] 05-2023 (La. 9/6/06), 938 So. 2d 662, 675.

Finally, in *Meyer & Assoc. v. Coushatta Tribe of La.*,[30] this court considered whether the Coushatta Tribe had waived its sovereign immunity via forum selection clauses in its contracts with an engineering firm. The clauses at issue provided in relevant part that "any dispute arising hereunder shall be heard by a court of competent jurisdiction in the Parish of Allen, or other Parish mutually agreed to," and that the tribe "specifically waives any rights, claims, or defenses to sovereign immunity it may have as it relates to this Agreement...." This court noted there was "no doubt that the language contained in the forum selection clauses would suffice to waive the Tribe's sovereign immunity, if the clauses are valid" when it rejected the tribe's argument that the tribe chairman who executed the agreements did not have authority to execute a waiver of sovereign immunity. The issue of whether forum selection clauses violate Louisiana's public policy was not before the court.

With this background in mind, we now consider the *res nova* issue of whether forum selection clauses are *per se* violative of public policy in Louisiana. Rimkus argues that contrary to the court's holding in *Thompson Tree*, forum selection clauses in contracts do not violate any express public policy of Louisiana. Rimkus asserts La. C.C.P. art. 44(A) makes no express statement of Louisiana public policy. Rather, Article 44(A) prohibits waiver of objections to the venue prior to suit, but does not prohibit contracts selecting a venue or forum by the parties prior to a dispute or suit. Further, Rimkus argues neither La. R.S. 9:2779 nor La. R.S. 51:1407(A) preclude forum selection clauses under the facts of this case. La. R.S. 9:2779 applies only to certain construction contracts, and expressly prohibits forum selection clauses in specific circumstances. La. R.S. 51:1407(A) goes a step further than Article 44(A) and expressly prohibits enforcement of forum selection clauses against a UPTA plaintiff in certain situations. Rimkus argues if Article 44(A) "clearly and

---

[30] 07-2256 (La. 9/23/08), 992 So. 2d 446.

unambiguously prohibits waiver of the Code's venue provisions prior to the institution of an action" as held by the court in *Thompson Tree*, then the legislature's enactment of La. R.S. 9:2779 was redundant and unnecessary. Further, there would have been no need for the legislature to add the public policy language to La. R.S. 51:1407(A) if Article 44(A) already prohibited the enforcement of a pre-suit contractual selection of venue against all plaintiffs.

By contrast, Shelter contends *Thompson Tree* correctly held such clauses are void and against Louisiana's stated policy prohibiting contractual waivers of venue requirements prior to suit. La. C.C.P. art. 44(A) prohibits waiver of the Code's venue provisions prior to suit. Shelter argues a forum selection clause, by its very nature, results in the waiver of the Code's venue provisions prior to the institution of an action. Further, Shelter asserts the legislature plainly declares this state's policy against forum selection clauses in La. R.S. 51:1407(A). Reading the text of that article *in pari materia* with Article 44(A), it follows that the legislature was referring to an already-existing public policy against forum selection clauses, not declaring a new public policy which only applies in UTPA matters. Additionally, in La. R.S. 9:2779, Shelter contends the Legislature reiterated in another context that such agreements are inequitable and against the public policy of this state. Shelter also cites La. R.S. 23:921[31] as an example of the Legislature voicing this state's general prohibition against choice of forum clauses.

After considering the law, briefs and arguments of the parties, we now hold that forum selection clauses are generally enforceable and are not *per se* violative of

---

[31] La. R.S. 23:921(A)(2) provides: The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

11

public policy in Louisiana. The Third Circuit in *Thompson Tree* concluded that forum selection clauses are generally unenforceable in Louisiana primarily based on its rationale that the legislature, by virtue of La. C.C.P. art. 44(A), has specifically declared a strong public policy against forum selection clauses. We find the lower courts erred in relying on this flawed interpretation of Article 44(A).

This court has explained:[32]

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.

> The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

Further, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction.[33] With these principles in mind, we examine the language of Article 44(A).

Included in the adoption of the Code of Civil Procedure in 1960, Article 44 simply states: "[a]n objection to the venue may not be waived prior to the institution of the action." According to our venue provisions, "[v]enue refers to the parish where

---

[32] *Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development*, 10-0193 (La. 1/19/11), 56 So. 3d 181, 187 (citing *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So. 2d 16, 27).

[33] *State v. Bedford*, 01-2298 (La. 1/28/03), 838 So. 2d 758, 760; *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360 (La. 12/3/03) 860 So. 2d 1112, 1119.

an action may properly be brought."[34] Contrary to *Thompson Tree*, we do not find Article 44(A) unequivocally addresses the enforceability of forum selection clauses. The plain language of Article 44(A) only prohibits the waiver of objections to the venue prior to the institution of suit, thereby providing protection to a defendant - the party entitled to object to the venue selected by the plaintiff. As noted by Rimkus, Article 44(A) does not state that "venue may not be waived prior to the institution of an action." Instead, the article focuses on the objection to the venue. An objection to "the venue" is raised through a declinatory exception to venue under La. C.C.P. art. 925(A)(4),[35] and only available to a defendant. The court in *Thompson Tree* improperly expanded the language of Article 44(A) to prohibit a party from contractually agreeing to bring suit in a specific forum. Article 44(A) merely allows a defendant to object to being sued in a parish that otherwise would be improper. Nothing in the instant forum selection clause requires the parties to waive their objections to venue. The forum selection clause in the "Terms and Conditions" represents Rimkus' and Shelter's contractual agreement to bring any litigation arising under their contract in Harris County, Texas, thus making it the proper venue as to this action. In sum, we find the language of Article 44(A) to be clear and unambiguous and its application does not lead to absurd consequences. Thus, we need look no further and need not examine the historical formation of Article 44(A) in search of the intent of the legislature.

Moreover, to deduce an express statement of public policy from Article 44(A) would require us to conclude that despite this alleged strong legislative expression of public policy against pre-suit contractual selections of venue, the legislature will

---

[34] La. C.C.P. art. 41.

[35] La. C.C.P. art. 925(A)(4) provides: The objections which may be raised through the declinatory exception include but are not limited to the following: (4) Improper venue.

readily allow enforcement of the contractually selected venue in those cases where the defendant intentionally or inadvertently fails to timely raise the declinatory exception to venue. La. C.C.P. art. 44(C) provides: "Except as otherwise provided in this article or by other law, any objection to the venue, including one based on any article in this Chapter, is waived by the failure of the defendant to plead the declinatory exception timely as provided in Article 928." Thus, under the interpretation of Article 44(A) in *Thompson Tree*, a defendant could agree to a forum selection clause prior to suit and elect not to raise an exception of venue after suit is filed in the agreed upon venue, effectively circumventing Article 44(A). Such a result supports our conclusion that Article 44(A) does not set forth a strong public policy statement proscribing parties from contracting in advance of litigation that suits arising out of that contract must be brought in a specific venue.

We also glean no broad statement of public policy from La. R.S. 9:2779(A), La. R.S. 51:1407(A) or La. R.S. 23:921(A)(2). This court has recognized:

> When interpreting a statute, the court should give it the meaning the Legislature intended. It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject.[36]

La. R.S. 9:2779(A) was enacted in 1991 and expressly declares out-of-state forum selection clauses against public policy in certain construction contracts. Specifically, the statute refers to construction contracts for "public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state,"

---

[36] *ABL Management, Inc. v. Board of Sup'rs of Southern University Supreme Court of Louisiana*, 00-0798 (La. 11/28/00), 773 So. 2d 131, 135 (internal citations removed).

and states that "provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state...are inequitable and against the public policy of this state." If the broad interpretation of Article 44(A) in *Thompson Tree* is to be accepted and if a prohibition against forum selection clauses already existed by virtue of Article 44(A), there was no reason for the legislature to enact the public policy statement in La. R.S. 9:2779(A) relative to this small subset of construction contracts.

Reliance on La. R.S. 51:1407(A) would be similarly baseless. The Louisiana Unfair Trade Practices Act was enacted by the Legislature in 1972[37] and included La. R.S. 51:1407, which provides the procedure for initiating a state action under the UTPA. The statute gives the attorney general power to institute legal proceedings in the name of the state against any person when he has reason to believe that such person is using, has used, or is about to use any unlawful unfair method, or deceptive act, or practice. In 1997, the statute was amended by Act 943 to "provide for venue to sue professional solicitors; to expand the definition of 'professional solicitor'; to provide for violations and penalties; and to provide for related matters."[38] In relevant part, the amendment provided the proper venue for suits against such persons, and further provided that "[i]n the event that such person was located outside of the state, but was soliciting in the state by mail, telephone, or any electronic communication, the action may be brought in the district court having civil jurisdiction in the parish in which the contact was made." The amendment went on to state:

> It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be

---

[37] 1972 La. Acts 759, § 1. The Act is codified in title 51, chapter 13 of Louisiana Revised Statutes. Chapter 13 is entitled "Unfair Trade Practices and Consumer Protection Law."

[38] 1997 La. Acts 943, § 1.

enforced against any plaintiff in an action brought in these courts."[39] Although this statutory public policy language appears broad at first glance, viewing the language in the proper context of the amendment makes clear its application is limited. As we explained in *Lejano*, the language in this statute is limited in scope to transactions or interactions between out-of-state, professional telephone solicitors and Louisiana residents.[40] If Article 44(A) has the expansive meaning assigned by *Thompson Tree* and adopted by Shelter, the restatement of public policy language in this limited situation is redundant and unnecessary.

Finally, La. R.S. 23:921(A)(2) prohibits forum selection clauses in employment contracts unless the choice of forum clause "is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is subject to the civil or administrative action." Likewise, the legislature's enactment of this specific limitation of forum selection clauses serves no purpose if Article 44(A) is read to provide a general public policy against any such clause.

After examining the above statutes, it is clear the legislature has only declared forum selection clauses unenforceable and against public policy in very limited circumstances. We reject a blanket application of the public policy stated in these statutes to every contractual forum selection clause. The legislature has clearly provided for a more limited application, and has recognized Louisiana's public policy only militates against the use of forum selection clauses in these particular circumstances. The legislature has been unequivocal in these specific contexts to establish that forum selection clauses contravene a strong public policy in Louisiana. Notably, nowhere in these statutes does the legislature cite to Article 44(A) as the source of an already-existing public policy against forum selection clauses.

---

[39] *Id*.

[40] *Lejano*, 705 So. 2d at 171.

Based on our review of the law, we find no reason for Louisiana to deviate from the general rule set forth by the United States Supreme Court that contractual forum selection clauses are *prima facie* valid. We hold that such clauses should be enforced in Louisiana unless the resisting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching .... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."[41] This court has long recognized that the freedom to contract is an important public policy.[42] We have explained:

> [P]arties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. "Freedom of contract" signifies that parties to an agreement have the right and power to construct their own bargains. In a free enterprise system, parties are free to contract except for those instances where the government places restrictions for reasons of public policy. The state may legitimately restrict the parties' right to contract if the proposed bargain is found to have some deleterious effect on the public or to contravene some other matter of public policy.[43]

The right of parties to freely contract must encompass the correlative power to agree to bring suit under that contract in a particular forum. Upholding the lower courts' rulings would undermine the ability of parties to freely contract and would thereby impair the ability of companies to do business in this state. The parties in this case are commercially sophisticated entities who have a history of conducting business together. We find no prohibition under the facts of this case to prevent the parties from contracting to limit their disputes to any forum of their choosing, and there is nothing in the record which would support a refusal to enforce this particular forum selection clause. As the Court recognized in *Bremen*, the elimination of uncertainties

---

[41] *Bremen*, 407 U.S. at 13.

[42] *In re Katrina Canal Breaches Litigation*, 10-1823 (La. 5/10/11), 63 So. 3d 955, 962.

[43] *Id*. at 963 [citing *Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc*., 96-1716 (La. 7/1/97), 696 So. 2d 1373,1380-81)].

relative to the location of litigation by agreement in advance on an acceptable forum to both parties is an indispensable element of trade, commerce and contracting.[44] Our ruling, holding forum selection clauses *prima facie* valid and generally enforceable, serves these important principles of free enterprise and commerce.

In reaching this conclusion, we recognize the legislature has the authority to enact a statute providing for wholesale prohibition on the enforcement of forum selection clauses. However, Article 44(A) is not such a provision. If indeed it is the intent of the legislature to declare such a public policy, we trust it will move to enact one.

## DECREE

Accordingly, for the foregoing reasons, the judgments of the lower courts overruling Rimkus' declinatory exception of venue are reversed.

**REVERSED AND RENDERED.**

---

[44] *Bremen*, 407 U.S. at 15.

07/01/14

# SUPREME COURT OF LOUISIANA

## NO. 13-CC-1977

### *SHELTER MUTUAL INS. CO.*

### *VERSUS*

### *RIMKUS CONSULTING GROUP*

## ON SUPERVISORY WRITS TO THE FIFTEENTH JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

**VICTORY, J., dissenting.**

For numerous reasons, I dissent from the majority opinion which upholds the forum selection clause in this case. In my view, forum selection clauses are prohibited by statute and contravene a strong public policy of Louisiana. Further, they are contrary to Louisiana's comprehensive venue scheme and our law on forum non conveniens. Therefore, they are unenforceable under Louisiana law.

First, forum selection clauses violate Louisiana Code of Civil Procedure Article 44(A), which states: "[a]n objection to the venue may not be waived prior to the institution of the action." A forum selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship. A contractual agreement to have disputes decided in a particular forum is a waiver of an objection to venue, because this selection of a particular venue necessarily waives the right to object to venue in all other forums, except the contractually selected venue. Thus, when suit is filed in the contractually selected venue, the defendant may not object because he has waived the right to object to the venue by agreeing to that venue prior to suit being filed. This is the only rational interpretation of this statute, for it could serve no other purpose. Significantly,

1

Professor Maraist would agree with this interpretation, as evident from his review of Article 44(A):

> Venue cannot be waived until suit is filed. Thus, the Code of Civil Procedure [La. C.C.P. art. 44(A)] would apparently preclude enforcement of a venue selection clause in a contract. However, the lower courts have enforced venue selection clauses.

Frank L. Maraist, <u>1 Louisiana Civil Law Treatise: Civil Procedure</u>, § 3:7, p. 71 (2d ed. 2008).

Second, the legislature has expressed that forum selection clauses are against the public policy of this state. La. R.S. 51:1407, a provision of the Unfair Trade Practices Act ("UTPA") provides:

> <u>It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure</u>, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts. (Emphasis added.)

While it may have been preferable for the legislature to express this policy in a more general statute, the policy statement is worded broadly, and refers to the already existing public policy encapsulated in La. C.C.P. art. 44(A) which it simply applies to the situations the UTPA addresses. I reject the majority's reasoning that if La. C.C.P. art. 44(A) prohibited forum selection clauses, then La. R.S. 51:1407 would be unnecessary. La. R.S. 51:1407 is broader than La. C.C.P. art. 44(A) in that it refers to a "contractual selection of venue or jurisdiction contrary to the Louisiana Code of Civil Procedure," while La. C.C.P. art. 44(A) only prohibits pre-litigation selection of venue.

Another statute referring to a strong public policy against forum selection clauses is La. R.S. 9:2779(A), which relates to construction contracts for projects in

this state, and which provides in part "provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state." This is another broadly worded statement that forum selection clauses are against the public policy of this state. I likewise reject the majority's reasoning that La. R.S. 9:2779 would be superfluous under my interpretation of La. C.C.P. art. 44(A), because unlike La. C.C.P. art. 44(A), La. R.S. 9:2779 prohibits not only pre-litigation waivers of an objection to venue, but also prohibits a party from consenting to a contractually-selected venue even after the litigation has commenced. And, it prohibits a party from consenting to the application of another state's laws. Further, it is reasonable to assume that in drafting both of these revised statutes, the legislature was reacting to the majority of the jurisprudence which had enforced forum selection clauses in spite of La. C.C.P. art. 44(A).

I also reject the majority's contention that La. R.S. 23:921(A)(2), which prohibits forum selection clauses in employment contracts in certain circumstances, would be surplusage if my interpretation were adopted. La. R.S. 23:921(A)(2) provides:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

I find this statute provides an exception to La. C.C.P. art. 44(A) for employment contracts, allowing an employee to agree to a forum before the suit is filed, but only

3

if done "after the occurrence of the incident which is the subject of the civil or administrative action."

In ***Sawicki v. K/S Stavanger Prince***, 01-0528 (La. 12/7/01), 802 So. 2d 598, we found that La. R.S. 23:921(A)(2) "is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction." In holding that La. R.S. 23:921 could be applied retroactively to plaintiff's cause of action, this Court explained:

> Louisiana Revised Statute 23:921A(2) is <u>a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction</u>. Thus, suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the clause was expressly, knowingly, and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation. <u>The legislature has expressed Louisiana's strong policy with a legitimate concern for providing justice to those parties who would otherwise be entitled to adjudication in a Louisiana court</u> . . . The requirement that forum selection clauses be expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury is a reasonable condition, and is appropriately geared toward <u>Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction</u>. (Emphasis added.)

802 So. 2d at 606. Thus, in ***Sawicki***, the Court addressed the enforceability of a forum selection clause in an employment contract in light of La. R.S. 23:921(A)(2), specifically noting a strong public policy of this state to allow Louisiana courts to adjudicate claims of plaintiffs who have properly invoked this state's jurisdiction. In ***Sawicki***, we did not find that this strong public policy was limited to employment contracts.

Third, our law on forum non conveniens, La. C.C.P. art. 123, supports this interpretation. Louisiana's forum non conveniens statute provides an out-of-state party with a means of having a suit brought in this state dismissed under certain

4

circumstances:

> B. Upon the contradictory motion of any defendant in a civil case filed in a district court of this state in which a claim or cause of action is predicated upon acts or omissions originating outside the territorial boundaries of this state, when it is shown that there exists a more appropriate forum outside of this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice, the court may dismiss the suit without prejudice; however, no suit in which the plaintiff is domiciled in this state, and which is brought in a court which is otherwise a court of competent jurisdiction and proper venue, shall be dismissed pursuant to this Article.
>
> . . .

La. C.C.P. art. 123. This Court has held that La. C.C.P. art. 123 is the only method whereby an out-of-state defendant can object to a Louisiana forum on venue grounds. *Fox v. Board of Sup'rs of Louisiana State University and Agr. and Mechanical College*, 576 So. 2d 978, 991 (La. 1991) ("[b]y authorizing forum non conveniens dismissal in only limited circumstances, it can be said that the legislature intended that this procedural device not be available in circumstances not specified in Article 123"). There is no provision in this statute which would allow a case to be dismissed by an out-of-state defendant because of a forum selection clause. In addition, the statute reflects a strong public policy in favor of Louisiana domiciliaries being able to file suit in a Louisiana court of competent jurisdiction and venue, as no suit will be dismissed on forum non conveniens grounds if the case is brought by a Louisiana domiciliary in a Louisiana court of competent jurisdiction and venue.

Fourth, the United States Supreme Court has established that, under federal law, forum selection clauses are prima facie valid and should be enforced unless "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Recognizing that certain states may have strong public policies against forum selection clauses,

5

the U.S. Supreme Court requires that before enforcing a forum selection clause, a federal court must look to the state law where the suit is brought to determine if that state has a strong public policy against forum selection clauses, which Louisiana does.

Fifth, the legislative history of La. C.C.P. 44(A) indicates the same. The Official Revision Comments of 1960 state that La. C.C.P. art. 44(A) "clarifies Art. 162, Code of Practice of 1870, which provides that a defendant 'shall not be permitted to elect any other domicile or residence for the purpose of being sued.'" Cited for this conclusion is *Jex v. Keary*, 18 La. Ann. 81 (1866), wherein this Court explained in detail the proper interpretation of Article 162 as applied to a forum selection clause choosing a particular Louisiana venue. *Jex* involved a forum selection clause in a mortgage which was executed in 1856. At that time, Article 162 provided "[i]t is a general rule in civil matters that one must be sued before the Judge having jurisdiction over the place where he has his domicile or residence." Article 162 was amended in 1861 and the following words were added to the above provision: "and that it shall not be permitted to elect any other domicile or residence for the purpose of being sued." The Court ultimately held that the amendment could not be given retroactive effect to prohibit the forum selection clause, but not before explaining the meaning of the law before, and after, the 1861amendment:

> The motive of this amendment is very clear to our mind: it was enacted to prevent the improper exercise of undue influence and advantage by money-lenders upon the needy, and to prevent also the obligor from waiving his domicile in advance, and at the time of the contracting of the obligation; and the only effect of this law is to reserve to the debtor his rights of pleading to the jurisdiction of the Court, notwithstanding any agreement to the contrary, but it does not forbid him from submitting to the jurisdiction of the Court, if he chose, by appearing and answering on the merits. C.P., Art. 93. Previous to this amendment, it was always considered that a party in contracting a debt, could agree to waive his domicile, and submit to the jurisdiction of another competent Court than that of his residence.

6

. . .

> The very enactment of this amendment to Art. 162, C.P., is a strong argument, going to demonstrate that previous to its passage, parties could waive their domicile by agreement; now any such waiver is prohibited and not binding. It is the agreement that is prohibited, and nothing more. We believe then that the agreement by which the defendant consented to waive his domicile or residence, was legal and binding on him at the time he contracted the obligation, and the legislative act passed subsequently, would not affect the rights of the suing creditor.

*Jex*, 18 La. Ann. at pp. 6, 8-9 (emphasis added). *See also **Phipps v. Snodgrass***, 31 La. Ann. 88 (La. 1879) and ***Lyons v. Kelly***, 40 La. Ann. 498 (La. 1888) (noting that Article 162 "relates to clauses where parties by agreement and with a view to a *future suit* designate a place to bring it" and prohibits such agreements). Thus, according to this Court's interpretation of Article 162 of the Code of Practice, the predecessor to La. C.C. P. art. 44(A), pre-suit waivers of domicile by contract were not allowed after Article 162 was amended in 1861. As La. C.C.P. art. 44(A) was meant to "clarify" Article 162 as amended, it is logical and consistent to conclude that La. C.C.P. art. 44(A) likewise prohibits pre-suit waivers to venue, i.e., forum selection clauses, as La. C.C.P. art. 44(A) uses the more global term, "venue." Thus, La. C.C.P. art. 44(A) is broader, in that it prohibits waiving all objections to venue, whereas Article 162 only prohibited a party from waiving his domicile as the proper venue. Further, in clarifying Art. 162 of the Code of Practice, the legislature placed the provisions of La. C.C.P. art. 44 (A) in the venue provisions of the Code of Civil Procedure, rather than in the jurisdiction provisions, which clarifies that La. C.C.P. art. 44(A) is only concerned with waivers of venue.[1] In addition, like Article 162, La. C.C.P. art. 44(A) does not prohibit a party from consenting, after he has been sued,

---

[1]One commentator has explained that this may have been "to avoid the consternation potentially created by [the] judicial merger of jurisdiction ratione personae and venue" in *Jex* and *Lyons*. *See* Eric Michael Liddick, Give Me Freedom of Contracts or Give Me Death: The Obscurity of Article 44(A) of the Louisiana Code of Civil Procedure, 54 Loy. L. Rev. 602, 609-19 (Fall 2008).

to suit in the venue chosen in the forum selection clause, if the venue chosen is waivable under La. C.C.P. art.44(B).

Finally, consideration of Louisiana's comprehensive venue scheme also indicates that forum selection clauses are prohibited. Under our scheme, when more than one Louisiana court has jurisdiction over both the subject matter of the action and the person of the defendant, the venue rules determine the appropriate parish or parishes in Louisiana for trial, giving consideration to the particular action and the particular defendant. Maraist, *supra*, § 3:1, p. 44. Unlike other states, Louisiana has a comprehensive statutory venue scheme which is contained in 32 code articles that provide the venue for all types of lawsuits. La. C.C.P. arts. 41-87. Article 42 provides the general venue rules.[2] The general rules are subject to the exceptions provided in Articles 71-85 and "as otherwise provided by law."[3] La. C.C.P. art. 43.

_____

[2]The general venue rules mandate that (1) actions against a Louisiana domiciliary be brought in the parish of his domicile, or if he resides but is not domiciled in the state, in the parish of his residence; (2) actions against a domestic corporation, insurer, or limited liability company be brought in the parish where its registered office is located; (3) actions against a domestic partnership or unincorporated association be brought in the parish of its principal place of business; (4) actions against a foreign corporation or limited liability company licensed to do business in the state be brought where its principal place of business is located; (5) actions against a foreign corporation or limited liability company not licensed to do business in the state, or a nonresident who has not appointed an agent for service of process (other than a foreign or alien insurer), be brought in the parish of the plaintiff's domicile or where service of process may be, and subsequently is, made served on the defendant; (6) actions against a nonresident (other than a foreign or alien insurer) who has appointed an agent for service of process be brought in the parish of the designated post office address of the agent; and (7) actions against foreign and alien insurers be brought in the parish of East Baton Rouge.

[3]These exceptions provide alternate venues for certain types of actions: actions against an individual who has changed his domicile (Art. 71); certain actions involving property (Art. 72); actions against joint or solidary obligors (Art. 73); actions on an offense or quasi offense (Art. 74); actions to establish or disavow filiation (Art. 74.1); custody proceedings (Art. 74.2); marriage of persons related by adoption (Art. 74.3); actions on an open account or promissory note (Art. 74.4); adult adoptions (Art. 74.5); actions on a judicial bond (Art. 75); actions on an insurance policy (Art. 76); actions on a contract (Art. 76.1); actions against a person doing business in another parish (Art. 77); actions against partners of an existing partnership (Art. 78); actions to dissolve a partnership (Art. 79); actions involving immovable property (Art. 80); actions involving a succession (Art. 81); actions to partition community property (Art. 82); actions to partition partnership property (Art. 83); actions involving certain retirement systems and employee benefit programs (Art. 84); actions against domestic corporations that has had their charter revoked (Art. 85); actions involving voting trusts (Art. 86); and actions involving compensation for wrongful conviction and imprisonment (Art. 87).

Certain of these venue provisions are non-waivable.[4]  La. C.C.P. art. 44(B).   For other actions, the general rule is that an objection to venue is waived unless it is urged in the declinatory exception.  La. C.C.P. art. 44.  Professor Maraist describes these venue articles as follows:

> The general venue pattern of the Code, contained in Articles 41 through 85, is simple and contemplates three kinds of venue:
>
> 1.  an exclusive, non-waivable venue for actions of nullity, the opening of successions, and certain family matters;
>
> 2.  a preferred venue in some actions, such as those involving opened successions, immovable property, partnerships and partition; and
>
> 3.  a general venue for all other cases, *i.e.*, the defendant must be sued at his "home base" in Louisiana (*e.g.*, at his domicile, for individuals domiciled in the state), or, at the option of plaintiff, in some alternate forum having a specified connection with the parties or the claims.

Maraist, *supra*, at p. 45-46.

A strong public policy against forum selection clauses can be gleaned from Louisiana's comprehensive venue scheme, in which the legislature has provided that, in most cases, a Louisiana defendant must be sued at his domicile or place of business, i.e., his "home base."   A forum selection clause would allow a plaintiff to avoid that rule, with no statutory provision allowing such an exception.  As one commentator has noted, "[if] a party has a forum-selection clause, it is likely that several venue provisions of the Louisiana Code of Civil Procedure are being violated."  Rebecca H. Block, Seriously Now, What Gives?  Legislation or Custom?  The Fate of Forum-Selection Clauses In Louisiana, 39 S.U.L. Rev. 265, 275 (Spring 2012).  "Thus, the most important policy reason for not enforcing forum-selection

---

[4]These non-waivable venue provisions are found in articles 2006, 2811, 2812, 3941, 3993, 4031-4034, and 4542, and relate to the following actions: the action of nullity of judgment; a proceeding to open a succession; an action for annulment or divorce; a judicial emancipation; a petition for appointment as tutor or a minor; a petition for interdiction.

clauses in Louisiana is to protect the cohesiveness of the code." ***Id.***

In conclusion, because a forum selection clause is a waiver of "an objection to the venue . . . prior to the institution of the action," no other determination can be made but that La. C.C.P. art. 44(A) prohibits forum selection clauses. This interpretation reflects the strong public policy against forum selection clauses. It also reflects the strong public policy of Louisiana to allow Louisiana courts of proper jurisdiction and venue to adjudicate the claims of Louisiana plaintiffs and to allow Louisiana parties to be sued at their "home base," as seen in Louisiana's comprehensive venue scheme. While forum selection clauses are widely used in commercial transactions throughout the country, we are obligated to apply the law as written and to declare forum selection clauses invalid under our state law. Should the legislature choose to allow forum selection clauses, the law must be changed.[5]

For all of the above reasons, I respectfully dissent.

---

[5]I note one important caveat. La. C.C.P. art. 44(A) only works to prohibit the enforcement of a forum selection clause when suit is filed in Louisiana. If filed in another state with proper jurisdiction and which allows forum selection clauses, then that state's law will be applied because it is a procedural law. "Because Louisiana is one of very few states that even considers not enforcing forum-selection clauses, the unenforceability of forum selection clauses is of significance only if the suit is filed in Louisiana." Block, *supra* at 272-73. Thirty-eight states, including, until now, Louisiana, have presumed the validity of forum selection clauses. ***Id.*** (Citing Rebecca H. Block and Dena M. Sonbol, Only in Louisiana: Forum-Selection Clauses Void as Against Public Policy, Around the Bar (Jan. 2012), at 10, http://www.brba.org?Images?AroundtheBar/jan2012_atb.pdf; Francis M. Dougherty, Annotation, Validity of Contractual Provision Limiting Place or Court in which Action May be Brought, 31 A.L.R.4th 404 (1984)). However, Louisiana's strong public policy must be given effect, even if it can only be given effect by a Louisiana court.